MICHAEL J. KHOURI, ESQ. [SBN 97654]
KHOURI LAW FIRM, APC
101 Pacifica, Suite 380
Irvine, California 92618
Telephone: (949) 336-2433
Facsimile: (949) 387-0044
E-mail: mkhouri@khourilaw.com

*Attorneys for plaintiffs*,
Allen Moyer and ADMI Incorporated

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN MOYER, an individual, and ADMI INCORPORATED,<br>Plaintiffs,<br><br>vs.<br><br>JOSEPH CELLURA, an individual, ADMI INC., TARSIN MOBILE INC.,<br>Defendants | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) VIOLATION OF 15 U.S.C. SECTION 1125**<br>**(2) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200**<br>**(3) COMMON LAW TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND OPPORTUNITIES**<br><br>**AND DEMAND FOR JURY TRIAL** |

Plaintiffs ALLEN MOYER ("Moyer") and ADMI INCORPORATED ("the Real ADMI"), (collectively "Plaintiffs") respectfully allege as follows:

## **I.**

## **PARTIES**

1. Plaintiff Allen Moyer is and at all pertinent times was a resident of the County of Santa Clara in the State of California and a citizen of the State of California. At all pertinent times, Moyer was sole owner and shareholder of the Real ADMI.

COMPLAINT FOR DAMAGES - 1

2. Plaintiff the Real ADMI at all pertinent times existed and was incorporated in the State of California with its principal place of business in the County of Santa Clara and at all pertinent times was a citizen of the State of California.

3. Defendant Joseph Cellura ("Cellura") is and was at all pertinent times a resident of Washoe County in the State of Nevada and was at all pertinent times a citizen of the State of Nevada. At all pertinent times, Cellura was a director and officer of ADMI Inc. ("the Fake ADMI") and Tarsin Mobile Inc. ("Tarsin") (collectively "Defendants").

4. Defendant the Fake ADMI at all pertinent times existed and was incorporated in the State of Nevada with its principal place of business in the State of New York and at all pertinent times was a citizen of the States of Nevada and New York.

5. Defendant Tarsin is a publicly traded corporation, which at all pertinent times was incorporated in the State of Florida with its principal place of business in the State of Nevada and at all pertinent times was a citizen of the States of Florida and Nevada.

## II.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction is based upon 28 U.S.C. Sections 1331 and 1332. Diversity exists because the Plaintiffs are citizens of the State of California and the Defendants are citizens of the States of Nevada, New York and/or Florida. Subject matter jurisdiction also arises out of the Constitution, law, or statutes of the United States since the Plaintiffs allege claims under 15 U.S.C. Section 1125.

7. Venue is appropriate in this district because the Defendants acquired the information needed to impersonate the Plaintiffs within the County of Santa Clara, State of California and in fact did impersonate the Plaintiffs within the County of Santa Clara, State of California as well as in multiple states of the United States.

8. To the extent that this matter is based upon federal question subject matter jurisdiction, the Plaintiffs also invoke the supplemental or ancillary jurisdiction of the court with respect to the second and third claims for relief contained in this complaint.

## III.

## AGENCY

9. The Plaintiffs allege that the Defendants at all pertinent times acted as the agent, servant, employer/employee, partner, co-conspirator, or acted in some other representative capacity of one another. Each Defendant is legally responsible for all the acts alleged below notwithstanding whether any act was committed by another Defendant.

10. The Plaintiffs allege that at all pertinent times the Defendants were functionally one entity and commingled funds, failed to observe corporate formalities, had common officers and directors and employees, possessed common bank accounts, and paid personal expenses with corporate monies. All of these acts make maintenance of the fiction of corporate separateness unfair, unjust, and unlawful.

## IV.

## FACTUAL ALLEGATIONS

11. At all pertinent times the Plaintiffs engaged in the business of program, project, and design management, often in the entertainment and hospitality industries. This business space is specialized and unique. Conducting business in that business space is largely dependent upon developing relationships with key individuals in the entertainment and hospitality industries. The Plaintiffs have spent decades building and maintaining a professional reputation and relationships in the industry space. As a result, the Plaintiffs have longstanding relationships with many iconic brands including Apple, Microsoft, Disney, Universal Studios, and others.

12. In or around 2016, the Defendants were searching for a way to enter the program, project, and design management business. When Cellura discovered one of his acquaintances personally knew Moyer, the Defendants asked for an introduction. After meeting the Plaintiffs, the Defendants became increasingly interested in purchasing the Real ADMI.

13. Over the next year and a half, the Plaintiffs and Defendants met multiple times in Santa Clara County. During the meetings, the Plaintiffs and Defendants discussed the Defendants' idea of purchasing the Real ADMI. As a consequence, Plaintiffs began to instruct Defendants on all aspects and details of the business. The Plaintiffs explained how to operate the Real ADMI successfully,

including things like operating methods, internal policies, project financing, effective marketing, how to meet key people, building economic relationships, computer tech, the tracking of business leads, and many other forms of critical knowledge.

14. The more the Defendants learned, the more they wanted to purchase the Real ADMI. The Plaintiffs and Defendants proceeded so far as to exchange unsigned letters of intent. While the letters of intent were pending, the Defendants started to represent to investors and prospective clients that the Defendants already had purchased the Real ADMI. In fact, the purchase was never consummated and such representations were intentional falsehoods.

15. After the Defendants failed to purchase the Real ADMI, the Defendants created the Fake ADMI. Upon its creation, the Fake ADMI started operating in concert with Tarsin. Tarsin, Cellura, and the Fake ADMI operated in concert as competitors of Plaintiffs. Tarsin, Cellura, and the Fake ADMI unfairly competed with Plaintiffs by representing orally and in writing that they had purchased Plaintiffs and/or were part of Plaintiffs' business operations.

16. The Defendants impersonated Plaintiffs in the same business space of the hospitality and entertainment industries. The Fake ADMI was nearly identical to the real ADMI. Based out of neighboring Nevada, the Fake ADMI imitated the Real ADMI down to the finest details. For example, the Fake ADMI utilized an email address that was virtually identical to the email address utilized by the Real ADMI. Additionally, the Fake ADMI utilized the Real ADMI's website when the Fake ADMI conducted marketing activities, entered contracts, and issued press releases before and after consummating agreements on projects. The Fake ADMI so thoroughly imitated the Real ADMI that the Fake ADMI's attorney sent a bill to the Real ADMI. The Defendants also reached out to prospective clients representing the Fake ADMI as affiliated with the Plaintiffs. The Defendants often claimed that the Fake ADMI was a branch office of the Plaintiffs or that the Defendants owned the Real ADMI outright. The Defendants essentially impersonated the Plaintiffs.

17. All of the Defendants impersonated Plaintiffs through false, misleading, and deceptive practices in the State of California (principally in the Counties of Santa Clara and Los Angeles, State of California) and Defendants also impersonated Plaintiffs through false, misleading, and deceptive

statements. In addition, the false, misleading, and deceptive statements occurred within the last year of the filing of this complaint and continue to occur to this day.

18. Defendants' impersonation of Plaintiffs was intentionally misleading and deceptive and created confusion in the industry. For example, Authentic Brands Group (owner of Sports Illustrated magazine) unknowingly entered into a licensing agreement with Defendants while believing the agreement was with Plaintiffs. After the Plaintiffs missed out on the agreement with Authentic Brands, the Plaintiffs contacted Authentic Brands and inquired why Authentic Brands chose to enter into an agreement with Defendants. In response, Authentic Brands indicated confusion and told Plaintiffs that Authentic Brands thought it had entered an agreement with Plaintiffs. Authentic Brands entered into the agreement with Defendants based upon confusion caused by the Defendants' misleading and deceptive impersonation of Plaintiffs. Authentic Brands was especially vulnerable to such deception because of its prior business relationship with Plaintiffs. The Defendants were also instrumental in publishing press releases that prominently featured their relationship with Authentic Brands. Defendants impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs.

19. The Defendants also deceived and misled the Golden Dome Partners. Golden Dome is a company that pursued financing for a sports-themed resort location at the University of Notre Dame. The Defendants falsely represented to Golden Dome that the Defendants owned the Real ADMI. The Defendants also falsely represented to Golden Dome that Moyer worked for the Defendants. Like Authentic Brands, the Golden Dome Partners were confused. The Golden Dome Partners believed they were dealing with the Plaintiffs. The Defendants were instrumental in publishing press releases boasting of their relationship with Golden Dome with links in those releases to Plaintiffs' website. In those press releases, Defendants again impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs. Absent the Defendants' deception, the Golden Dome business would have been obtained by Plaintiffs.

20. Another example of the Defendants' deceptive practices was the Defendants' solicitation of the Eastern Band of Cherokee Indians ("Cherokees"). The Cherokees sought to develop a sports-themed resort on land owned, occupied, or managed by the Cherokees. In soliciting the Cherokees, the

Defendants impersonated the Plaintiffs. The Cherokees were told that the Defendants owned the Real ADMI; that representation was a lie. The Cherokees were told that Moyer worked with or was affiliated with the Defendants; that representation was a lie. The Defendants were instrumental in publishing a press release about their relationship with the Cherokees that contained a link to Plaintiffs' website. Just like with Authentic Brands and Golden Dome, in that press release Defendants impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs.

21. Authentic Brands, Golden Dome Partners, the Cherokees, and others would not have conducted business with Defendants if not for the Defendants impersonating the Plaintiffs by use of misleading, deceptive, and confusing practices. Indeed, there are many other clients and potential clients of Plaintiffs that were deceived by Defendants. A list of such clients is attached to this complaint as Exhibit 1.

22. The Plaintiffs have needed to reach out to multiple clients and potential clients to reveal the Defendants' impersonation and attempt repairing the Plaintiffs' reputation and relationships. The Plaintiffs still do not know the full extent of the Defendants' deception.

## **V.**

## **FIRST CLAIM FOR RELIEF – VIOLATION OF 15 U.S.C. SECTION 1125**
## **Against All Defendants**

23. The Plaintiffs re-allege and incorporate by reference each allegation in paragraphs 1 through 22 of this complaint as if fully set forth herein.

24. 15 U.S.C. Section 1125 explicitly prohibits using false or misleading representations of fact likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of a person with another person. The Defendants violated Section 1125 by impersonating the Plaintiffs. The Defendants intentionally created a corporation with a name nearly identical to the Real ADMI, operated in the same business space as the Plaintiffs, pursued clients by utilizing the Plaintiffs' website and a virtually identical email, expressly represented to customers in the industry that the Plaintiffs were associated with the Defendants, and boasted of achievements that were actually the Plaintiffs' accomplishments. In short, the Defendants took extensive measures to intentionally cause confusion and mistakes among the Plaintiffs' clientele and in the Plaintiffs' business space.

25. As a direct and proximate result of impersonating Plaintiffs through false, misleading, and confusing practices the Defendants were able to obtain program, project, and design management agreements.

26. As a result of the Defendants' alleged unlawful conduct, the Plaintiffs have suffered damages in excess of 20 million dollars, with the exact amount to be proven at trial.

## VI.

## SECOND CLAIM FOR RELIEF - VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200

### Against All Defendants

27. The Plaintiffs re-allege as if fully set forth below, all the allegations in paragraphs 1 through 26 of this complaint.

28. California Business and Professions Code Section 17200 defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Defendants' impersonation of the Plaintiffs constitutes unlawful, unfair, untrue, or fraudulent business conduct, so the Defendants' actions violate Section 17200. The Defendants' actions are also independently unlawful under 15 U.S.C. Section 1125.

29. Section 17200 also defines unfair competition as unfair, deceptive, untrue, or misleading advertising. The Defendants used such advertisements to promote the Fake ADMI and perpetuate the impersonation, which qualifies as unfair, deceptive, untrue, or misleading advertising. Therefore, the Defendants' advertisements also violate Section 17200.

30. The Defendants' unlawful, unfair, or fraudulent conduct and advertising directly and proximately caused the Plaintiffs damages because Authentic Brands, Golden Dome, the Cherokees, and others entered agreements with the Defendants as a result of Defendants' impersonation of Plaintiffs. As a result, the Plaintiffs have suffered actual and general damages to be proven at trial. The Defendants should also be ordered to disgorge to Plaintiffs all income and monies collected as a result of Defendants' impersonation of Plaintiffs, along with statutory fines and penalties.

# VII.

## THIRD CLAIM FOR RELIEF – COMMON LAW TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

### Against All Defendants

31. Plaintiffs re-allege as if fully set forth below, all the allegations in paragraphs 1 through 32 of this complaint.

32. At all pertinent times, Plaintiffs had existing economic and business relationships with Authentic Brands, Golden Dome Partners, the Cherokees, and others including but not limited to the entities set forth in Exhibit 1 of this complaint. These economic and business relationships would have more probably than not resulted in future economic benefit to Plaintiffs.

33. At all pertinent times, Defendants had actual knowledge of Plaintiffs' existing and potential business and economic relationships.

34. At all pertinent times, Defendants knowingly and intentionally interfered with Plaintiffs' existing and potential business and economic relationships. The Defendants knowingly and intentionally interfered with Plaintiffs' existing and potential economic and business relationships with Authentic Brands, Golden Dome, the Cherokees, each entity identified in Exhibit 1, and others unknown, whose identities will be discovered during this litigation.

35. The Defendants directly and proximately caused economic harm to the Plaintiffs. As a sole, direct, and proximate result of Defendants' interference as alleged above, Plaintiffs have suffered general and special damages including but not limited to loss of income, loss of reputation, and loss of business opportunities.

36. The conduct of the Defendants as alleged above was committed with malice, oppression, and fraud performed with the intent to vex, injure, or annoy Plaintiffs. The Defendants knowingly, intentionally, and purposefully impersonated the Plaintiffs with the goal of eliminating the Plaintiffs from the marketplace and destroying the Plaintiffs' business. The Plaintiffs are entitled to punitive damages in an amount that would punish the Defendants and deter such conduct in the future.

# VIII.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

## ON THE FIRST CAUSE OF ACTION

1. For general damages in excess of 20 million dollars, with the exact amount to be proven at trial;

## ON THE SECOND CAUSE OF ACTION

2. For restitution and disgorgement of funds which Defendants obtained from impersonation of the Plaintiffs;
3. For statutory fines and penalties;
4. For Plaintiffs' attorney's fees;

## ON THE THIRD CAUSE OF ACTION

5. For general damages in excess of 20 million dollars, with the exact amount to be proven at trial;
6. For punitive damages in an amount to be determined at trial;

## ON ALL CAUSES OF ACTION

7. For cost of suit and other relief the court deems just and proper;

Respectfully submitted,

Dated June 20, 2023  KHOURI LAW FIRM, APC

By:  /s/Michael Khouri
MICHAEL J. KHOURI
*Attorneys for Plaintiffs*,
ALLEN MOYER
ADMI INCORPORATED

## IX.
## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

                By:    /s/Michael Khouri
                         MICHAEL J. KHOURI
                         *Attorneys for Plaintiffs*,
                         ALLEN MOYER
                         ADMI INCORPORATED