EXHIBIT 5

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ADMI INC, TARSIN MOBILE INC., by their CEO, JOSEPH R. CELLURA and JOSEPH R. CELLURA, Individually,<br><br>                  Plaintiffs,<br>VS.<br><br>ALLEN D. MOYER and ADMI INCORPORATED,<br><br>                  Defendants. | **Case No.22-9339/ALC**<br><br><br>**Plaintiffs' Motion to Enjoin the Defendants' Prosecution of a Subsequently Filed Action and Order Directing the Defendants to File <u>Their Answer or a Motion with the Court</u>** |

**COMES NOW** Plaintiffs, ADMI INC., TARSIN MOBILE INC., and JOSEPH R. CELLURA by and through the Law offices of Douglas R. Dollinger, PC, Counsel of Record as and for their Motion to Enjoin Prosecution by the above-named Defendants ALLEN D. MOYER and ADMI INCORPORATED, under the First-Filed-Rule for their action filed in the Northern District of California **(23-cv-03004-SVK.)** after Plaintiff's Complaint was filed before this Court; and for and order granting the Defendants 45 days to file their answer or otherwise move to dismiss Plaintiffs' Complaint a term agreed among counsel; and in the event the Defendants fail to do so, allow an inquest and default judgment to be entered to the Complaint before this Court. **(Dkt1-5 & 24.)**

Dated: July 31, 2023

               *Douglas R. Dollinger, Esq.*
               Douglas R. Dollinger, Esq. 5922
               Law Offices of Douglas R. Dollinger, PC
               570 County Rt 49
               Middletown, New York 10940
               Phone | 845.741.9363
               Email ddollingeresq@gmail.com
               Attorney for Plaintiffs

To: Khouri Law Firm, APC
    101 Pacifica, Suite 380

Irvine, California 92618
Email: mkhouri@khourilaw.com

Law Offices of Edward P. Kerns, a PLC
Edward P. Kerns, Esq.
5743 Corsa Ave., Suite 116
Westlake Village, CA  91362
(818)707-0370
Email Edward@Ho-Oponopono.Attorney

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon:

Khouri Law Firm, APC
101 Pacifica, Suite 380
Irvine, California 92618
Email: mkhouri@khourilaw.com

Law Offices of Edward P. Kerns, a PLC
Edward P. Kerns, Esq.
5743 Corsa Ave., Suite 116
Westlake Village, CA  91362
(818)707-0370
Email Edward@Ho-Oponopono.Attorney


Each are attorneys for the Defendants  where service has been made via Federal Express

overnight deleivery and  through the electronic email services at the email addresses identified

by each of them with service occurring on July 31, 2023.

*Douglas R. Dollinger, Esq.*
Douglas R. Dollinger, Esq.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ADMI INC, TARSIN MOBILE INC.,  by their CEO,
JOSEPH R. CELLURA and  JOSEPH R. CELLURA,
Individually,

         Plaintiffs,

   VS.

ALLEN D. MOYER  and ADMI INCORPORATED,

        Defendants.

**Case No.22-9339/ALC**

 

**Plaintiffs' Memorandum of Law for an Order Enjoining  Prosecution of**
**an Action Commenced by the Defendants' Subsequent to the Instant Action**

Dated: July 29, 2023

*Douglas R. Dollinger, Esq.*

Douglas R. Dollinger, Esq. 5922
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Phone | 845.741.9363
Email ddollingeresq@gmail.com
Attorney for Plaintiffs

# TABLE OF CONTENTS

**Section**                                                                                                                          **Page**

Table of Authorities...............................................................................................................ii-iii

I.          Introduction.................................................................................................................1

II.         The First-Filed Rule Applies to Plaintiffs' Complaint........................................................2

III.        A Strong Presumption in Favor of the Forum to the First-Filed Suit Exists.......................4

IV.        This Court has the Power to Enjoin the Second-Filed Action in California.......................4

V.         There are No Special Circumstances to Justify an Exception to the First-Filed Rule.................5

VI.        The Balance of Convenience Exist in Plaintiffs' Favor......................................................6

VII.       The First-Filed Rule Should be Applied to Prevent Prejudice to Plaintiffs.......................8

VIII.      Conclusion.................................................................................................................9

Certificate of Service............................................................................................................9

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.,*
    860 F. Supp. 128, 132 (S.D.N.Y. 1994.....................................................................4

*City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991)......................................3

*Commer v. American Federation of State, County and Municipal Employees*
    272 F. Supp.2d 332, 339 (S.D.N.Y. 2003, aff'd, 390 F.3d 203 (2d Cir. 2004).........................4

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)...................................3,7

*Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*
    542 F. Supp. 1317, 1321 (S.D.N.Y. 1982).......................................................................4

*Employers Ins. of Wausau v. Fox Entertainment Group, Inc.,*
    522 F.3d 271, 274 (2d Cir. 2008)..........................................................................*Passim*

*Fandino v. Amalgam Entertainment, LLC*, 09 Civ. 8325, 2010
    WL 607819, *2 (S.D.N.Y. Feb. 19, 2010)..................................................................5,6

*First City Nat'l Bank & Trust v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)..............................3

*Marshak*, 2000 WL 33152076................................................................................5

*Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974).................................................3,4

*Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 298 (E.D. La. 1988)...........................4

*MMZ Associates, Inc. v. Gelco Corp.*,
    2006 WL 3531429, *3 (Dec. 8, 2006, S.D.N.Y).......................................................5

*New York Marine and General Ins. Co. v. LaFarge North America, Inc.,*
    599 F.3d 102, 112 (2d Cir. 2010).......................................................................3,5

*Ontel Products, Inc. v. Project Strategies Corp.*,
    899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)...........................................................3,4

*Reliance Ins. Co. v. Six Star, Inc.*,
    155 F.Supp.2d 49, 54 (S.D.N.Y. 2001)...............................................................5

*Schnabel v. Ramsey Quantitative Systems, Inc.,*
    322 F. Supp.2d 505, 511 (S.D.N.Y. 2004)..........................................................4

## TABLE OF AUTHORITIES CONT.

**Cases**                                                                                      **Page**

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
 324 F. Supp. 3d 421 (S.D.N.Y. 2018)................................................................6,7

*William Gluckin & Co. v. Int'l Playtex Corp.*,
 407 F.2d 177, 178 (2d Cir. 1969)................................................................3,5

*Zapways.com, Inc. v. Xerox Corp.*, 01 Civ. 10123,
 2002 WL 193155, *1 (Feb. 6, 2002, S.D.N.Y.)......................................5


**Federal Statutes Codes**

 Fed.R.Civ.P. 8................................................................................................3

Fed.R.Civ.P. 9................................................................................................3

Fed.R.Civ.P. 13(a)..........................................................................................4

15 U.S.C. Section1125....................................................................................2

28 U.S.C. § 1404(a)........................................................................................6

**California State Law**

California Business and Professions Code Section 17200....................................2

Common Law Tortious Interference with Business Relations and Opportunities.............2

## I.
## <u>Introduction</u>

The Complaint in this matter was filed on  November 1, 2022**. (Dkt1-5)**  Plaintiffs' ADMI INC, TARSIN MOBILE INC., were seeking damages and injunctive/declaratory relief related to Defendants' ALLEN D. MOYER   and ADMI INCORPORATED attempts to unlawfully interfere in their business affairs as well as disparage the Companies and their CEO, Plainfff JOSEPH R. CELLURA. The Court was advised that notwithstanding multiple attempts to serve the Defendants, service was ultimately accomplished after unnecessary expenses on December 9, 2022.   **(Dkt-22.)**

At or about this time, Counsel for the Defendants, Edward Kerns of Westlake Village, California and  Michael J. Khouri, Esq., of Irvine, California, contacted the undersigned.  Each Attorney was advised Plaintiffs' would be amending their complaint but before doing so, as requested by the parties, would first attempt to resolve the matter through mediation.

The Court was advised of the circumstances explaining that the parties had a desire to mediate a settlement of their claims.  Part of the agreement to mediate and to request the stay included a term among counsel that in the event of a breakdown in negotiations and the need to return to court, Plaintiffs would amend their complaint and Defendants would have 30/45 days to answer or move for dismissal. Based on an agreed desire for mediation the Court stayed the matter. **(Dkt-24.)**   Negotiations were ongoing among the parties until recently and have now broken down.

Rather than file an Answer or file any other pleading in this Court as agreed, Defense counsel Khouri, without notice filed a Complaint in the Northern District  of California.  **(ND-Dkt-5:23-cv-03004-SVK.)** The Complaint alleges: (1) a Violation of 15 U.S.C. Section1125; (2) a Violation of California Business  and  Professions  Code  Section  17200;  and  (3)  Common  Law  Tortious

Interference with Business Relations and Opportunities. **(Exhibit "A".)** The Answer is not due until

August 7, 2023, and none  has been filed.  The Court has been placed on notice of the Instant motion.

**II.**

**The First-Filed Rule Applies to Plaintiffs' Complaint**

Under the circumstances, the first-filed rule applies in this case. It is the principle that

"'where an action is brought in one federal district court and a later action embracing the same

issue is brought in another federal court, the first court has jurisdiction to enjoin prosecution

of the second action'… unless 'there are special circumstances which justify giving priority to

the second' action." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991)

(quoting *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974) and *William Gluckin & Co. v.

Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)).  Beyond the fact that the Defendants'

Complaint fails to comply with the most basic pleading standard required by  Fed.R.Civ.P. 8,

nor those required by Fed.R.Civ.P. 9, to state a cause of action to the asserted claims for relief

in there Complaint, the allegations are essentially nothing more than a counterclaim to the

same lawsuit involving the same parties and the same issues now  pending before this Court.

There is a presumption that because Plaintiff's case was filed earlier it takes

priority.  *See, e.g., Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271,

274 (2d Cir. 2008). Under the "first-filed" rule, "[w]here there are two competing lawsuits, the first

suit should have priority."  *New York Marine and General Ins. Co. v. LaFarge North America, Inc.*,

599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d

Cir. 2006). *See also Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150

(S.D.N.Y. 1995) ("Where lawsuits concerning the same parties and issues are pending in two federal

districts, the first-filed rule of the Second Circuit generally affords priority to the first-filed suit when

courts choose which suit to permit to go forward." [citing] *First City Nat'l Bank & Trust v. Simmons*,

878 F.2d 76, 79 (2d Cir. 1989); *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974); *Employers Ins. of Wausau v. Fox Entertainment Group, Inc*., 522 F.3d 271, 274-75 (2d Cir. 2008).  The operative date in applying this rule is the date of filing, and not service. **(Dkt.1-5.)**   In this case the filing and service both occurred long before the California Action was filed. See, e.g., *Schnabel v. Ramsey Quantitative Systems, Inc.,* 322 F. Supp.2d 505, 511 (S.D.N.Y. 2004).

## III.
## A Strong Presumption in Favor of the Forum to the First-Filed Suit Exists

"There is a strong presumption in favor of the forum of the first-filed suit." *Schnabel*, 322 F. Supp.2d at 510 [quoting *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 54 (S.D.N.Y. 2001)].  The rule "avoids duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue." *Ontel Products, Inc.*, 899 F. Supp. at 1150; *see also Commer v. American Federation of State, County and Municipal Employees*, 272 F. Supp.2d 332, 339 (S.D.N.Y. 2003, aff'd, 390 F.3d 203 (2d Cir. 2004) ("'The first-filed rule … is designed to prevent inconsistent rulings between courts of coordinate jurisdiction and equal power, wasteful duplicative legislation and piecemeal resolution of disputes that require uniform rules.'" [quoting *Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 298 (E.D. La. 1988)].  The rule is especially applicable here, it was developed to "serve the purpose of promoting efficiency and should not be disregarded lightly." *800-Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F. Supp. 128, 132 (S.D.N.Y. 1994) (internal quotations omitted) (dismissing second action in favor of the first-filed trademark infringement/declaratory judgment action).

## IV.
## This Court has the Power to Enjoin the Second-Filed Action in California

This Court has the exclusive power  to decide the question of whether the first-filed rule applies.  *Ontel Products, Inc.,* 899 F. Supp. at 1150, n. 9; *Donaldson, Lufkin & Jenrette, Inc. v. Los*

*Angeles County*, 542 F. Supp. 1317, 1321 (S.D.N.Y. 1982). Under Federal Rule of Civil Procedure Rule 13(a) the first-filed district court may enjoin a party from pursuing a second-filed action. See, *e.g.*, *MMZ Associates, Inc. v. Gelco Corp.*, 2006 WL 3531429, *3 (Dec. 8, 2006, S.D.N.Y.) (granting plaintiff's motion pursuant to Fed.R.Civ.P. 13(a) to enjoin defendant from pursuing second-filed action in the District of Minnesota), and other cases there cited.) The first-filed district court has jurisdiction to enjoin the prosecution of a later-filed action "unless there are special circumstances which justify giving priority to the second action." *City of New York v. Exxon*, 932 F.2d at 1025, quoting *William Gluckin & Co.*, 407 F.2d at 178; *Zapways.com, Inc. v. Xerox Corp.*, 01 Civ. 10123, 2002 WL 193155, *1 (Feb. 6, 2002, S.D.N.Y.) (granting plaintiff's motion for a preliminary injunction preventing the defendant from prosecuting second-filed action) *Marshak*, 2000 WL 33152076 (granting preliminary injunction enjoining defendant from further prosecution of an action in the District of Massachusetts).

## V.
## <u>There are No Special Circumstances to Justify an Exception to the First-Filed Rule</u>

The Defendants will be unable to "show that special circumstances justify an exception." *Reliance Ins. Co.*, 155 F. Supp.2d at 54. 'Special circumstances' include "manipulative or deceptive behavior on the part of the first-filing plaintiff" (*New York Marine and General Ins. Co.*, 599 F.3d at 112), either where "the first-filed suit constitutes an 'improper anticipatory filing,' or one made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different federal district" *Ontel Prods., Inc.*, 899 F. Supp. at 1150 (internal quotations omitted); see also *Fandino v. Amalgam Entertainment, LLC*, 09 Civ. 8325, 2010 WL 607819, *2 (S.D.N.Y. Feb. 19, 2010) ("Special circumstances exist where a party files a declaratory judgment in anticipation of a coercive suit"), or where forum shopping alone motivated the choice of forum in the filing of the first suit. *Fandino*, *supra* at *2, and cases there cited.) Plaintiffs' Complaint before this Court was

the product of Defendant ALLEN MOYER's wrongdoing in using of his Company, the Defendant, ADMI INCORPORATED, to unlawfully extract and otherwise attempt to extract  money from the Plaintiff Companies, its partners, and potential partners, intentionally interfering in their business doing so without legal right in their business undertakings and relationships in New York.   The Defendants' Complaint fundamentally admits the controversy is tied to New York Plaintiff place of business and  their New York Partners Authentic Brands Group. There has been no manipulation or deception by the Plaintiffs.  The Plaintiffs suffered actual harm to their business and personal affairs in New York long before they commenced their action and were first to file in this Court.

## VI.
### The Balance of Convenience Exist in Plaintiffs' Favor

"If no special circumstances exist, courts should next conduct a balance of convenience test to determine whether a second-filed suit should take priority*." Fandino v. Amalgam Entertainment, LLC*, 2010 WL 607819 at *2.   There are seven (7)  factors relevant to such a test which "are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Id.,* quoting *Employers Ins. of Wausau*, 522 F.3d at 275; *D.H. Blair & Co.*, 462 F.3d at 106-07; *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421 (S.D.N.Y. 2018).

These factors each favor Plaintiffs' choice of forum in these proceedings:

(1)  *"The plaintiffs' choice of forum."*  Plaintiffs are doing business in New York and chose New York as their proper and preferred forum. Their choice of forum must be given preference. (2*)"The convenience of witnesses."*  All witnesses, both the Plaintiffs and Defendants, based on the allegations set forth in the Plaintiffs' Complaint and likewise the Defendants' Complaint, each have deep rooted ties to New York in connection to the facts, and relate to virtually every fact in support of the Plaintiff's claims and in contradiction to Defendants' errant California claims where all the testimony will be central to the issues in this dispute concerning multiple aspects of the litigation disproving that the contracts

were procured with the Plaintiffs' New York Partners under circumstances where the Partners were dupped into entering the contacts with Plaintiffs because they falsely believed they were doing business with the Defendants. It would mean all the witnesses in Plaintiff case will be overly inconvenienced being compelled to appear in California for a case involving damages related to New York contract and business where a counterclaim on the very issue would be compulsory and imposed with no additional cost to the Defendant MOYER and his Company ADMI INCORPORATED.  (3)*"The location of relevant documents and relative ease of access to sources of proof."* All  the claims involve Plaintiffs' New York business' and contracts. The Defendants' claims arise from the very contracts executed in New York with their New York partners where virtually all the documents are maintained and readily accessible. (4)  *"The convenience of parties."* Not only do the Plaintiffs maintain offices in New York but the Defendants conduct and solicit business in New York. (5) *"The locus of operative facts."*  All the operative facts involve claims against the Defendant MOYER alleging that he is using the Defendant ADMI INCORPORATED acting illegally interfering in Plaintiffs' businesses and contracts with its New York partners; falsely claiming the right to provide exclusive architectural services on all of Plaintiffs' projects where Defendant MOYER is nothing more than an outside consultant and third-party vendor who has been paid for his services by Plaintiffs and others in that capacity.  In either event the locus of operative facts is in New York such that the proof of Defendant MOYER's unlawful conduct is directly tied to New York where Plaintiffs' first-filed Complaint was lodged.  This factor alone controls the purposes of venue. (6) "*The availability of process to compel the attendance of unwilling witnesses"* [and] *(7)"The relative means of the parties."* These factors tips heavily in favor of the Plaintiffs and against the Defendants far outweighing the expenses associated with the need to compel at least four (4) non-party unwilling witness appearances related any claim in this case made by the  Plaintiffs' and any defense or prosecution of the Defendants' claims.  *See*, *Fandino, Id.,  Employers Ins. of Wausau*, at 275, *Id*; *D.H. Blair & Co., Id.,* at 106-07. *Starr Indem., Id.* (Emphasis added.)

**VII.**
**The First-Filed Rule Should be Applied to Prevent Prejudice to Plaintiffs**

Injunction pursuant to the first-filed rule is a proper remedy for a district court to impose. The relief was originally adopted decades ago and continuously reconfirmed by the district courts in the Second Circuit (and many other districts/circuits). The Rule is intended as the necessary means to address situations where the same parties raise the same contentions in two separate district court venues. The case law makes it clear this Court has substantial power concerning the application of the first-filed rule.

**VIII.**
**Conclusion**

For all the above reason and the law applied in the matter Plaintiffs seek an Oeder enjoining the Defendant prosecution and direct the parties to enter a Joint Discovery Schedule.

Dated: July 31, 2023

*Douglas R. Dollinger, Esq.*

Douglas R. Dollinger, Esq. 5922
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Phone | 845.741.9363
Email ddollingeresq@gmail.com
Attorney for Plaintiffs

To: Khouri Law Firm, APC
101 Pacifica, Suite 380
Irvine, California 92618
Email: mkhouri@khourilaw.com

Law Offices of Edward P. Kerns, a PLC
Edward P. Kerns, Esq.
5743 Corsa Ave., Suite 116
Westlake Village, CA  91362
(818)707-0370
Email Edward@Ho-Oponopono.Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon:

Khouri Law Firm, APC
101 Pacifica, Suite 380
Irvine, California 92618
Email: mkhouri@khourilaw.com

Law Offices of Edward P. Kerns, a PLC
Edward P. Kerns, Esq.
5743 Corsa Ave., Suite 116
Westlake Village, CA  91362
(818)707-0370
Email Edward@Ho-Oponopono.Attorney

Each are attorneys for the Defendants  where service has been made via Federal Express

overnight deleivery and  through the electronic email services at the email addresses identified

by each of them with service occurring on July 31, 2023.

*Douglas R. Dollinger, Esq.*
Douglas R. Dollinger, Esq.

# EXHIBIT "A"

MICHAEL J. KHOURI, ESQ. [SBN 97654]
KHOURI LAW FIRM, APC
101 Pacifica, Suite 380
Irvine, California 92618
Telephone: (949) 336-2433
Facsimile: (949) 387-0044
E-mail: mkhouri@khourilaw.com

*Attorneys for plaintiffs*,
Allen Moyer and ADMI Incorporated

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN MOYER, an individual, and ADMI INCORPORATED,<br>Plaintiffs,<br><br>vs.<br><br>JOSEPH CELLURA, an individual, ADMI INC., TARSIN MOBILE INC.,<br>Defendants | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) VIOLATION OF 15 U.S.C. SECTION 1125**<br>**(2) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200**<br>**(3) COMMON LAW TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND OPPORTUNITIES**<br><br>**AND DEMAND FOR JURY TRIAL** |

Plaintiffs ALLEN MOYER ("Moyer") and ADMI INCORPORATED ("the Real ADMI"), (collectively "Plaintiffs") respectfully allege as follows:

## I.

## PARTIES

1.     Plaintiff Allen Moyer is and at all pertinent times was a resident of the County of Santa Clara in the State of California and a citizen of the State of California. At all pertinent times, Moyer was sole owner and shareholder of the Real ADMI.

2.    Plaintiff the Real ADMI at all pertinent times existed and was incorporated in the State of California with its principal place of business in the County of Santa Clara and at all pertinent times was a citizen of the State of California.

3.    Defendant Joseph Cellura ("Cellura") is and was at all pertinent times a resident of Washoe County in the State of Nevada and was at all pertinent times a citizen of the State of Nevada. At all pertinent times, Cellura was a director and officer of ADMI Inc. ("the Fake ADMI") and Tarsin Mobile Inc. ("Tarsin") (collectively "Defendants").

4.    Defendant the Fake ADMI at all pertinent times existed and was incorporated in the State of Nevada with its principal place of business in the State of New York and at all pertinent times was a citizen of the States of Nevada and New York.

5.    Defendant Tarsin is a publicly traded corporation, which at all pertinent times was incorporated in the State of Florida with its principal place of business in the State of Nevada and at all pertinent times was a citizen of the States of Florida and Nevada.

## II.
## JURISDICTION AND VENUE

6.    Subject matter jurisdiction is based upon 28 U.S.C. Sections 1331 and 1332. Diversity exists because the Plaintiffs are citizens of the State of California and the Defendants are citizens of the States of Nevada, New York and/or Florida. Subject matter jurisdiction also arises out of the Constitution, law, or statutes of the United States since the Plaintiffs allege claims under 15 U.S.C. Section 1125.

7.    Venue is appropriate in this district because the Defendants acquired the information needed to impersonate the Plaintiffs within the County of Santa Clara, State of California and in fact did impersonate the Plaintiffs within the County of Santa Clara, State of California as well as in multiple states of the United States.

8.    To the extent that this matter is based upon federal question subject matter jurisdiction, the Plaintiffs also invoke the supplemental or ancillary jurisdiction of the court with respect to the second and third claims for relief contained in this complaint.

### III.

### AGENCY

9.     The Plaintiffs allege that the Defendants at all pertinent times acted as the agent, servant, employer/employee, partner, co-conspirator, or acted in some other representative capacity of one another. Each Defendant is legally responsible for all the acts alleged below notwithstanding whether any act was committed by another Defendant.

10.    The Plaintiffs allege that at all pertinent times the Defendants were functionally one entity and commingled funds, failed to observe corporate formalities, had common officers and directors and employees, possessed common bank accounts, and paid personal expenses with corporate monies. All of these acts make maintenance of the fiction of corporate separateness unfair, unjust, and unlawful.

### IV.

### FACTUAL ALLEGATIONS

11.    At all pertinent times the Plaintiffs engaged in the business of program, project, and design management, often in the entertainment and hospitality industries. This business space is specialized and unique. Conducting business in that business space is largely dependent upon developing relationships with key individuals in the entertainment and hospitality industries. The Plaintiffs have spent decades building and maintaining a professional reputation and relationships in the industry space. As a result, the Plaintiffs have longstanding relationships with many iconic brands including Apple, Microsoft, Disney, Universal Studios, and others.

12.    In or around 2016, the Defendants were searching for a way to enter the program, project, and design management business. When Cellura discovered one of his acquaintances personally knew Moyer, the Defendants asked for an introduction. After meeting the Plaintiffs, the Defendants became increasingly interested in purchasing the Real ADMI.

13.    Over the next year and a half, the Plaintiffs and Defendants met multiple times in Santa Clara County. During the meetings, the Plaintiffs and Defendants discussed the Defendants' idea of purchasing the Real ADMI. As a consequence, Plaintiffs began to instruct Defendants on all aspects and details of the business. The Plaintiffs explained how to operate the Real ADMI successfully,

including things like operating methods, internal policies, project financing, effective marketing, how to meet key people, building economic relationships, computer tech, the tracking of business leads, and many other forms of critical knowledge.

14. The more the Defendants learned, the more they wanted to purchase the Real ADMI. The Plaintiffs and Defendants proceeded so far as to exchange unsigned letters of intent. While the letters of intent were pending, the Defendants started to represent to investors and prospective clients that the Defendants already had purchased the Real ADMI. In fact, the purchase was never consummated and such representations were intentional falsehoods.

15. After the Defendants failed to purchase the Real ADMI, the Defendants created the Fake ADMI. Upon its creation, the Fake ADMI started operating in concert with Tarsin. Tarsin, Cellura, and the Fake ADMI operated in concert as competitors of Plaintiffs. Tarsin, Cellura, and the Fake ADMI unfairly competed with Plaintiffs by representing orally and in writing that they had purchased Plaintiffs and/or were part of Plaintiffs' business operations.

16. The Defendants impersonated Plaintiffs in the same business space of the hospitality and entertainment industries. The Fake ADMI was nearly identical to the real ADMI. Based out of neighboring Nevada, the Fake ADMI imitated the Real ADMI down to the finest details. For example, the Fake ADMI utilized an email address that was virtually identical to the email address utilized by the Real ADMI. Additionally, the Fake ADMI utilized the Real ADMI's website when the Fake ADMI conducted marketing activities, entered contracts, and issued press releases before and after consummating agreements on projects. The Fake ADMI so thoroughly imitated the Real ADMI that the Fake ADMI's attorney sent a bill to the Real ADMI. The Defendants also reached out to prospective clients representing the Fake ADMI as affiliated with the Plaintiffs. The Defendants often claimed that the Fake ADMI was a branch office of the Plaintiffs or that the Defendants owned the Real ADMI outright. The Defendants essentially impersonated the Plaintiffs.

17. All of the Defendants impersonated Plaintiffs through false, misleading, and deceptive practices in the State of California (principally in the Counties of Santa Clara and Los Angeles, State of California) and Defendants also impersonated Plaintiffs through false, misleading, and deceptive

statements. In addition, the false, misleading, and deceptive statements occurred within the last year of the filing of this complaint and continue to occur to this day.

18.    Defendants' impersonation of Plaintiffs was intentionally misleading and deceptive and created confusion in the industry. For example, Authentic Brands Group (owner of Sports Illustrated magazine) unknowingly entered into a licensing agreement with Defendants while believing the agreement was with Plaintiffs. After the Plaintiffs missed out on the agreement with Authentic Brands, the Plaintiffs contacted Authentic Brands and inquired why Authentic Brands chose to enter into an agreement with Defendants. In response, Authentic Brands indicated confusion and told Plaintiffs that Authentic Brands thought it had entered an agreement with Plaintiffs. Authentic Brands entered into the agreement with Defendants based upon confusion caused by the Defendants' misleading and deceptive impersonation of Plaintiffs. Authentic Brands was especially vulnerable to such deception because of its prior business relationship with Plaintiffs. The Defendants were also instrumental in publishing press releases that prominently featured their relationship with Authentic Brands. Defendants impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs.

19.    The Defendants also deceived and misled the Golden Dome Partners. Golden Dome is a company that pursued financing for a sports-themed resort location at the University of Notre Dame. The Defendants falsely represented to Golden Dome that the Defendants owned the Real ADMI. The Defendants also falsely represented to Golden Dome that Moyer worked for the Defendants.  Like Authentic Brands, the Golden Dome Partners were confused. The Golden Dome Partners believed they were dealing with the Plaintiffs. The Defendants were instrumental in publishing press releases boasting of their relationship with Golden Dome with links in those releases to Plaintiffs' website. In those press releases, Defendants again impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs. Absent the Defendants' deception, the Golden Dome business would have been obtained by Plaintiffs.

20.    Another example of the Defendants' deceptive practices was the Defendants' solicitation of the Eastern Band of Cherokee Indians ("Cherokees"). The Cherokees sought to develop a sports-themed resort on land owned, occupied, or managed by the Cherokees. In soliciting the Cherokees, the

Defendants impersonated the Plaintiffs. The Cherokees were told that the Defendants owned the Real ADMI; that representation was a lie. The Cherokees were told that Moyer worked with or was affiliated with the Defendants; that representation was a lie. The Defendants were instrumental in publishing a press release about their relationship with the Cherokees that contained a link to Plaintiffs' website. Just like with Authentic Brands and Golden Dome, in that press release Defendants impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs.

21.     Authentic Brands, Golden Dome Partners, the Cherokees, and others would not have conducted business with Defendants if not for the Defendants impersonating the Plaintiffs by use of misleading, deceptive, and confusing practices. Indeed, there are many other clients and potential clients of Plaintiffs that were deceived by Defendants. A list of such clients is attached to this complaint as Exhibit 1.

22.     The Plaintiffs have needed to reach out to multiple clients and potential clients to reveal the Defendants' impersonation and attempt repairing the Plaintiffs' reputation and relationships. The Plaintiffs still do not know the full extent of the Defendants' deception.

### V.

### FIRST CLAIM FOR RELIEF – VIOLATION OF 15 U.S.C. SECTION 1125
### Against All Defendants

23.     The Plaintiffs re-allege and incorporate by reference each allegation in paragraphs 1 through 22 of this complaint as if fully set forth herein.

24.     15 U.S.C. Section 1125 explicitly prohibits using false or misleading representations of fact likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of a person with another person. The Defendants violated Section 1125 by impersonating the Plaintiffs. The Defendants intentionally created a corporation with a name nearly identical to the Real ADMI, operated in the same business space as the Plaintiffs, pursued clients by utilizing the Plaintiffs' website and a virtually identical email, expressly represented to customers in the industry that the Plaintiffs were associated with the Defendants, and boasted of achievements that were actually the Plaintiffs' accomplishments. In short, the Defendants took extensive measures to intentionally cause confusion and mistakes among the Plaintiffs' clientele and in the Plaintiffs' business space.

25. As a direct and proximate result of impersonating Plaintiffs through false, misleading, and confusing practices the Defendants were able to obtain program, project, and design management agreements.

26. As a result of the Defendants' alleged unlawful conduct, the Plaintiffs have suffered damages in excess of 20 million dollars, with the exact amount to be proven at trial.

## VI.

## SECOND CLAIM FOR RELIEF - VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200

### Against All Defendants

27. The Plaintiffs re-allege as if fully set forth below, all the allegations in paragraphs 1 through 26 of this complaint.

28. California Business and Professions Code Section 17200 defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Defendants' impersonation of the Plaintiffs constitutes unlawful, unfair, untrue, or fraudulent business conduct, so the Defendants' actions violate Section 17200. The Defendants' actions are also independently unlawful under 15 U.S.C. Section 1125.

29. Section 17200 also defines unfair competition as unfair, deceptive, untrue, or misleading advertising. The Defendants used such advertisements to promote the Fake ADMI and perpetuate the impersonation, which qualifies as unfair, deceptive, untrue, or misleading advertising. Therefore, the Defendants' advertisements also violate Section 17200.

30. The Defendants' unlawful, unfair, or fraudulent conduct and advertising directly and proximately caused the Plaintiffs damages because Authentic Brands, Golden Dome, the Cherokees, and others entered agreements with the Defendants as a result of Defendants' impersonation of Plaintiffs. As a result, the Plaintiffs have suffered actual and general damages to be proven at trial. The Defendants should also be ordered to disgorge to Plaintiffs all income and monies collected as a result of Defendants' impersonation of Plaintiffs, along with statutory fines and penalties.

# VII.

## THIRD CLAIM FOR RELIEF – COMMON LAW TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

### Against All Defendants

31.    Plaintiffs re-allege as if fully set forth below, all the allegations in paragraphs 1 through 32 of this complaint.

32.    At all pertinent times, Plaintiffs had existing economic and business relationships with Authentic Brands, Golden Dome Partners, the Cherokees, and others including but not limited to the entities set forth in Exhibit 1 of this complaint. These economic and business relationships would have more probably than not resulted in future economic benefit to Plaintiffs.

33.    At all pertinent times, Defendants had actual knowledge of Plaintiffs' existing and potential business and economic relationships.

34.    At all pertinent times, Defendants knowingly and intentionally interfered with Plaintiffs' existing and potential business and economic relationships. The Defendants knowingly and intentionally interfered with Plaintiffs' existing and potential economic and business relationships with Authentic Brands, Golden Dome, the Cherokees, each entity identified in Exhibit 1, and others unknown, whose identities will be discovered during this litigation.

35.    The Defendants directly and proximately caused economic harm to the Plaintiffs. As a sole, direct, and proximate result of Defendants' interference as alleged above, Plaintiffs have suffered general and special damages including but not limited to loss of income, loss of reputation, and loss of business opportunities.

36.    The conduct of the Defendants as alleged above was committed with malice, oppression, and fraud performed with the intent to vex, injure, or annoy Plaintiffs. The Defendants knowingly, intentionally, and purposefully impersonated the Plaintiffs with the goal of eliminating the Plaintiffs from the marketplace and destroying the Plaintiffs' business. The Plaintiffs are entitled to punitive damages in an amount that would punish the Defendants and deter such conduct in the future.

## VIII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:


ON THE FIRST CAUSE OF ACTION

1. For general damages in excess of 20 million dollars, with the exact amount to be proven at trial;


ON THE SECOND CAUSE OF ACTION

2. For restitution and disgorgement of funds which Defendants obtained from impersonation of the Plaintiffs;

3. For statutory fines and penalties;

4. For Plaintiffs' attorney's fees;


ON THE THIRD CAUSE OF ACTION

5. For general damages in excess of 20 million dollars, with the exact amount to be proven at trial;

6. For punitive damages in an amount to be determined at trial;


ON ALL CAUSES OF ACTION

7. For cost of suit and other relief the court deems just and proper;


Respectfully submitted,

Dated June 20, 2023

KHOURI LAW FIRM, APC

By:    /s/Michael Khouri
       MICHAEL J. KHOURI
       *Attorneys for Plaintiffs*,
       ALLEN MOYER
       ADMI INCORPORATED

# IX.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

By:    /s/Michael Khouri
       MICHAEL J. KHOURI
       *Attorneys for Plaintiffs*,
       ALLEN MOYER
       ADMI INCORPORATED