EXHIBIT 6

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADMI INC, TARSIN MOBILE INC., by their CEO, JOSEPH R. CELLURA and JOSEPH R. CELLURA, Individually,<br><br>                                Plaintiffs,<br><br>        VS.<br><br>ALLEN MOYER, an individual, and ADMI INCORPORATED,<br><br>                                Defendants. | Case No.1:22-cv-09339(ALC)<br><br>Judge: ANDREW L. CARTER, JR.<br><br>**Defendants' Motion To Dismiss For "Insufficient Service Of Process"; Motion To Dismiss For "Lack Of Personal Jurisdiction"; And Response To OSC On Jurisdictional Grounds; Memorandum of Points and Authorities**<br><br>[Special Appearance by Defendants' counsel and Defendants]<br><br>Due Date: 08/31/2023 |

Attorneys for Defendants Allen Moyer and ADMI INCORPORATED (collectively, "Defendants") and Defendants specially appear to challenge jurisdiction of this Court over Defendants. Defendants are moving the Court to dismiss the action and dissolve the **ORDER TO SHOW CAUSE** as to why the motion ("Motion") to Enjoin Defendants Prosecution of a Subsequently Filed Action Should Not Be Deemed Unopposed and Order Directing Defendants to File Their Answer or a Motion. Motion was filed by Plaintiffs ADMI INC, TARSIN MOBILE INC., and JOSEPH R. CELLURA (collectively, "Plaintiffs) on July 31, 2023.

### I.       INTRODUCTION

This Motion will be made pursuant to *Federal Rule of Civil Procedure* 12(b)(5) ("Rule 12(b)(5)") on the grounds of insufficiency of service of process in that Defendants were not

served as required by *Federal Rule of Civil Procedure* 4 ("Rule 4") and pursuant to *Federal Rule of Civil Procedure* ("Rule 12(b)(2)") on the grounds that the District Court's does not have personal jurisdiction over Defendants.

## II.    STATEMENT OF FACTS

Plaintiffs sued Defendants in the Southern District of New York twice. The first case was filed on 10/28/2022 ("First Lawsuit") and dismissed without prejudice on 10/31/2022 due to uncorrected deficient pleadings. Defendants were never served and only incidentally came to know about that lawsuit.

The second lawsuit by the same Plaintiffs against Defendants was filed on 10/31/2022 ("Second Lawsuit"). It has more than 30 docket entries. A significant number of the entries are dealing with deficiencies in Plaintiffs' paperwork. Defendants were also never served with this lawsuit, as required by Rule 4(c), and were never even asked to waive the service of process pursuant to Rule 4(d). (See Khouri Decl. ¶ 3, Moyer Decl. ¶¶ 5, 7) Also, their attorneys were never asked to accept the service of process on their behalf. (See Khouri Decl. ¶ 3) Defendants also state that they are not evading the service of process (See Moyer Decl. ¶ 6).

To Defendants great disappointment, Plaintiffs' counsel, Mr. Douglas R. Dollinger, blatantly misrepresented in his declaration ("Dollinger Decl.") ¶ 5 that Defendants were properly served. This misrepresentation led the Court to issue the Order to Show Cause as to why Motion should not be deemed unopposed.

Defendants presently do not conduct any business in the state of New York (*See* Moyer Decl. ¶ 3). Their last business contact with the state of New York was approximately 10 years ago and is unrelated to the current lawsuit. (*See* Moyer Decl. ¶ 4) Over the course of his 70 years, the defendant, Mr. Moyer, had visited New York no more than six times. He resided in

Defendants' Motion To Dismiss

California for the last 25 years. He was born in Ohio and grew up in Florida. (*See* Moyer Decl. ¶ 3) In email communications with Plaintiffs' attorney Mr. Dollinger, Defendants consistently asserted that courts in New York lack personal jurisdiction over them. The email communication chain of the letters is attached as Exhibit 1 to Michael J. Khouri's declaration. (See Khouri Decl. ¶ 6) Plaintiff Mr. Cellura resides in the State of Nevada. (*See* Moyer Decl. ¶ 12 and Complaint ¶ 6) One of his businesses, ADMI INC., is incorporated in Nevada and is doing business in New York. (*See* Moyer Decl. ¶ 13 and Complaint ¶ 4) Another one of his businesses, TARSIN MOBILE INC., is incorporated in Florida and is doing business in Nevada. (*See* Moyer Decl. ¶ 13 and Complaint ¶ 5) Only Plaintiffs are doing business in New York and impersonating Defendants. (*See* Moyer Decl. ¶ 13)

To expedite the resolution process and as a gesture of respect towards this Court, Defendants consented to engage in mediation outside of New York State. However, at a certain juncture, Plaintiffs ceased their pursuit of mediation through email or any other means of communication. (See Khouri Decl. ¶¶ 5, 6) In order to protect themselves from continuing harmful and unlawful activities by Plaintiffs, Defendants had no choice but to file a lawsuit in the Northern District of California on 6/20/2023, Case No. **23-cv-03004-SVK**. (See Khouri Decl. ¶ 8) Plaintiffs were promptly and properly served and have hired a California-based attorney to defend the action.

### III.    MEMORANDUM OF POINTS AND AUTHORITIES

### 1.  Under Rule 12(b)(5), This Court Lacks Jurisdiction Over Defendants

Rule 12(b)(5) allows a defendant to seek dismissal of a complaint for insufficient service of process. Federal Rules of Civil Procedure Rule 4 ("Rule 4") governs the requirements for proper service, and any deviation from its provisions may warrant dismissal of the action. The

1
2
plaintiff has the burden of proving that service was valid under the applicable rules. Rule 4 allows various methods of service.

3
4
5
The most economical way to serve process would be to request a waiver of service of process per Rule 4(d)(1). Plaintiffs never requested such waiver of service from Defendants (*See* Moyer Decl. ¶ 7) or their attorneys. (See Khouri Decl. ¶ 6)

6
7
8
9
10
11
12
13
Rule 4(e)(1) allows "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Plaintiffs never completed the service of process as permitted by either New York or California laws. Contrary to Plaintiffs' counsel assertions (*See* Dollinger Decl. ¶ 3), there is no proof of service filed with the court. The docket entry ("Dkt") ¶ 22, mentioned in counsel's declaration is not a court order permitting service by email, but a supplemental letter referencing an ex-parte Motion for Email Service, which was also withdrawn for filing defects. (Dkt-20.)

14
15
16
17
Per Rule 4(m), if the defendant is not served within 90 days following filing of the complaint, the court must dismiss the action or order the service to be performed within the specified period of time.

18
19
20
21
22
23
No service on defendants, personal or otherwise, was accomplished. Also, Defendants were never asked to waive the service of process requirement as allowed by Rule 4(d). Plaintiffs' violation of Rule 4 is intentional, as it is difficult to imagine any competent attorney not being aware of how to properly serve defendants after filing a lawsuit. The time for perfecting the service of process allowed by Rule 4(m) is already up, since there has been more than 9 months since the filing of Second Complaint.

24
25
26

4

Because no service of process was accomplished on Defendants, this Court lacks jurisdiction over Defendants and cannot order Defendants to answer or to enjoin prosecution of another lawsuit.

**2. Under Rule 12(b)(2), This Court Does Not Have Personal Jurisdiction Over Defendants**

When subject matter jurisdiction is based upon diversity, acquiring personal jurisdiction over a non-resident defendant in New York is governed by *Civil Practice Law and Rules* ("CPLR"). In accordance with CPLR § 302(a)(1), a court holds the authority to assert specific personal jurisdiction over an individual not residing in the state, provided that they have engaged in "business transactions within the state." Meeting the limitations of CPLR § 302(a)(1) requires the plaintiff to meet a dual set of criteria. Firstly, the defendant must have conducted business activities within New York. Secondly, the plaintiff must demonstrate a tangible link between the business activities conducted in New York and the underlying cause of action being litigated. (*McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981).)

In this context, and contrary to Plaintiffs assertion in their Complaint, the Defendants are not involved in any business dealings within the boundaries of New York state. (*See* Moyer Decl. ¶ 3) The most recent transaction that Defendants were part of, even if only distantly linked to New York, occurred around 10 years ago. (*See* Moyer Decl. ¶ 4) There is no connection between that business activity and the instant lawsuit. (*See* Moyer Decl. ¶ 4) Only Plaintiffs while impersonating Defendants are conducting business in New York, but such activity cannot be attributed to Defendants.

Due Process Clause of the 14th Amendment limits the ability of a State to assert personal jurisdiction over a non-resident defendant. The defendant must have minimum contacts with the

forum and a controversy must arise out of these minimum contacts. (*Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).)

Defendant Mr. Moyer resides in the State of California. His business, ADMI, Incorporated is registered in California and does not do any business in New York. (*See* Moyer Decl. ¶¶ 1, 3) The last time Defendants did business in New York was approximately 10 years ago. (*See* Moyer Decl. ¶ 4) It was a short-term contract that lasted only 3-4 months. That transaction is not related to the present lawsuit. (*See* Moyer Decl. ¶ 4) Moreover, Mr. Moyer does not have personal connections to New York. He never resided there and only visited it no more than 6 times in his entire 70 years. (*See* Moyer Decl. ¶ 3)

Because Defendants do not conduct any business in New York, it would be extremely unfair to compel them to appear in a lawsuit that bears no relation to New York. There are no minimum contacts to satisfy the Due Process requirement to hold Defendants accountable in the State of New York.

The Court should dismiss this lawsuit. Because Plaintiffs failed to effectuate the service of process, this Court has no jurisdiction over Defendants. Furthermore, asserting personal jurisdiction over Defendants in New York is both unconstitutional and contradicts New York's CPLR § 302(a)(1).

## I.   CONCLUSION AND PRAYER FOR RELIEF

In light of the foregoing, Defendants respectfully request that:

1. The court grants the motion to dismiss for insufficient service of process and for lack of personal jurisdiction,

2. The Court dissolves The **Order to Show Cause** as to Why the Motion to Enjoin Defendants Prosecution of a Subsequently Filed Action Should Not Be Deemed

6

Unopposed and order directing Defendants to file their answer or a motion, or in an alternative,

3.  Schedule a further briefing or/and hearing on service of process defects and on jurisdictional issues.

Respectfully submitted.

By:     /s/ Valery R. Polyakov
        Valery R. Polyakov

Dated: August 28, 2023

**Khouri Law Firm, APC**
Michael J. Khouri, Esq. (admitted pro hac vice)
    E-mail:  mkhouri@khourilaw.com
Chad A. Trainer, Esq. (admitted pro hac vice)
    E-mail:  ctrainer@khourilaw.com
Valery R. Polyakov, Esq. (admitted pro hac vice)
    E-mail:  vpolyakov@khourilaw.com
101 Pacifica, Suite 380
Irvine, California 92618
Telephone:    (949) 336-2433
Fax:          (949) 387-0044

Attorneys for Defendants ALLEN D. MOYER and ADMI INCORPORATED

Defendants' Motion To Dismiss

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADMI INC, TARSIN MOBILE INC., by their CEO, JOSEPH R. CELLURA and JOSEPH R. CELLURA, Individually, | Case No.1:22-cv-09339(ALC) |
| Plaintiffs, | Judge: ANDREW L. CARTER, JR. |
| VS. | **Michael J. Khouri's Declaration in support of Defendants' Motion To Dismiss And Response To OSC** |
| ALLEN MOYER, an individual, and ADMI INCORPORATED, | |
| Defendants. | |

I, Michael J. Khouri, Esq., declare as follows:

1.  I am an attorney duly licensed to practice in all courts of the states of California and Texas, the principal of Khouri Law Firm APC, and the attorney of record for Defendants ALLEN MOYER and ADMI INCORPORATED.

2.  I have personal knowledge of the facts set forth in this declaration or believe them to be true upon information and belief. If called as a witness, I could and would competently testify to the following facts. I make this declaration in support of the above-referenced Motion.

3.  I was not asked to accept service of process on behalf of Defendants. Also, I was never asked to waive the service of process on behalf of Defendants under the Federal Rules of Civil Procedure, Rule 4.

4.  Out of respect for the New York Judge, Defendants agreed to mediate their dispute with Plaintiffs, without submitting to the jurisdiction of the New York District Court.

5.  I proposed several mediators in California in my email from Dec 27th 2022 (See Exhibit 1, pp. 3, 4)

1

6. My last substantive communication with Plaintiffs' New York counsel, Mr. Dollinger about mediation was on Jan 23, 2023 (See Exhibit 1, p. 1), where he promised to "work out the issue of Mediation" during the same week, but never did.

7. Attached to my Declaration is Exhibit 2, which is a true and exact copy of the California complaint filed on 6/20/2023, Case No. **23-cv-03004-SVK.**

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 28, 2023 at Irvine, California.

_/s/ Michael J. Khouri_
Michael J. Khouri, Esq.
Declarant

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADMI INC, TARSIN MOBILE INC.,  by their CEO, JOSEPH R. CELLURA and  JOSEPH R. CELLURA, Individually,<br><br>                             Plaintiffs,<br><br>          VS.<br><br>ALLEN MOYER, an individual, and ADMI INCORPORATED,<br><br>                             Defendants. | Case No.1:22-cv-09339(ALC)<br><br>Judge: ANDREW L. CARTER, JR.<br><br>**Allen D. Moyer's Declaration in support of Defendants' Motion To Dismiss And Response To OSC** |

I, Allen D. Moyer, declare as follows:

1.  I am the defendant in this case, and I am the principal of ADMI INCORPORATED, which is also the defendant in this case. ADMI INCORPORATED is incorporated in California. I am a project manager for the construction of entertainment venues.

2.  I have personal knowledge of the facts set forth in this declaration or believe them to be true upon information and belief. If called as a witness, I could and would competently testify to the following facts. I make this declaration in support of the above-referenced Motion.

3.  I do not conduct any business in the state of New York. I have resided in California for the last 25 years, and I am currently 70 years of age. Although I was born in Ohio, I grew up in Florida. The last time I visited the state of New York was 10 years ago. Throughout my entire life, I have visited New York no more than 6 times.

4.  The last time I had a business contact related to the state of New York was approximately 10 years ago. My employees were overseeing a project at one of Starbucks cafes in New York City. The project lasted 3-4 months, and the contract for that project was signed in Seattle, WA. This project has nothing to do with the present lawsuit and is unrelated to Joe Cellura.

5. I was never served with any of the lawsuits filed against me in New York.

6. I am not evading and was never evading the service of process.

7. I was not asked to waive the service of process under the Federal Rules of Civil Procedure, Rule 4.

8. I never authorized any of my attorneys to accept or waive service of process on my behalf. My attorneys never asked me to accept or waive service of process on my behalf. Because New York has no personal jurisdiction over me, I would never permit my attorneys to accept service of process on my behalf.

9. On the dates indicated in the non-service reports 11/7/2022, 11/19/2022, 11/21/2022, and 11/22/2023, I had no idea that someone was trying contact me at my house.

10. I live on a large estate, but I would have opened the door if someone had rung the bell.

11. Out of respect for this Court, I agreed to mediate my dispute with the plaintiffs without submitting to the jurisdiction of the District Court in New York.

12. I am familiar with Joe Cellura. He lives in Nevada about a 30 minutes drive from the California border in the Lake Tahoe area. Prior to that he lived in California.

13. Joe Cellura and his companies are impersonating me and ADMI Incorporated in the State of New York, among other places. His companies are registered in Nevada and Florida.

14. None of the allegations in my complaint have anything to do with New York.

15. None of the witnesses to Cellura's impersonation reside in New York. Most of them are in California, Neveda, and New Mexico.

//

//

Allen D. Moyer's Declaration in support of Defendants' Motion To Dismiss And Response To OSC

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 27, 2023 at Morgan Hill, California

__Allen D. Moyer__
Declarant

Allen D. Moyer's Declaration in support of Defendants' Motion To Dismiss And Response To OSC

# EXHIBIT 1

**(Attached to Declaration of Michael Khouri in Support of Motion to dismiss and response to OSC)**

From:  Douglas R. Dollinger, ESQ.

To:      Michael J. Khouri

Subject:        Re: Tarsin Mobile v Allen Moyer

Date:    Monday, January 23, 2023 3:56:53 PM


Mike-Undergoing medicals all week. I will work out the issue of Mediation on Thursday or Friday thanxs.




On Saturday, January 14, 2023 at 02:58:13 PM EST, Michael J. Khouri

<mkhouri@khourilaw.com> wrote:




You may call me any time at the number below. Mike Michael J. Khouri

Khouri Law Firm APC 101 Pacifica, Suite 380

Irvine, California 92618

(949) 680-6332


On Jan 14, 2023, at 10:47 AM, Douglas R. Dollinger, ESQ. <drdlinxs@aol.com> wrote:

**EXHIBIT 1 (Attached to Declaration of Michael Khouri in Support of Motion to dismiss and response to OSC)**

Please contact me we need to discuss this mater.

On Wednesday, December 28, 2022 at 02:28:01 PM EST, Michael J. Khouri

<mkhouri@khourilaw.com> wrote:

Sure … call or email me once you hear from your clients. I'm out of the country on vacation

commencing tomorrow through and including the 7th but I'll be available by email or cell phone

949-680-6332. Mike Khouri

Michael J. Khouri Khouri Law Firm, APC

101 Pacifica, Suite 380

Irvine, California 92618

(949) 680-6332

http://www.khourilaw.com

NOTICE: This email (including attachments) is covered by the Electronic Communications

Privacy Act, 18 U.S.C. 2510-2521, is confidential and

may be legally privileged. If you are not the intended recipient, you are hereby notified that any

retention, dissemination, distribution, or copying of this communication is strictly prohibited.

Please reply to the sender that you have received the message in error then delete it.

2

**EXHIBIT 1 (Attached to Declaration of Michael Khouri in Support of Motion
to dismiss and response to OSC)**

From: Douglas R. Dollinger, ESQ. <drdlinxs@aol.com> Date: Wednesday, December 28, 2022 at 11:24 AM To: Michael J. Khouri <mkhouri@khourilaw.com> Subject: Re: Tarsin Mobile v Allen Moyer

I acknowledge your representation of Mr. Moyer and ADMI Incorporated. I will serve all future correspondence and pleadings, if any, on you office.

I sent a message to my clients concerning mediation and other matters. I expect to hear form them by the end of the week or no later than just after the New Year.       On this issue of jurisdiction I do not agree but lets see what we can do to resolve he matter.

On Tuesday, December 27, 2022 at 08:17:19 PM EST, Michael J. Khouri <mkhouri@khourilaw.com> wrote:

Mr. Dollinger- this short email will advise that I have been retained by Allen Moyer and ADMI Inc to provide representation in the above referenced matter. In this regard, I have read the Court's endorsement of the matters contained in your letter of December 9, 2022. Based upon that endorsement I believe that the court expects the parties to engage in mediation in good faith within the next 45 days. My clients are in agreement with the concept of an early mediation though my clients maintain that neither the federal or state courts in the State of New York have personal jurisdiction over Mr. Moyer and ADMI. In this regard, my clients must insist that the mediation take place in California and I nominate retired federal judge James Otero, retired federal judge Andrew Guilford or retired federal magistrate judge Suzanne Segal. All are located in Southern California where it was 80 degrees on Christmas day.

3

**EXHIBIT 1 (Attached to Declaration of Michael Khouri in Support of Motion to dismiss and response to OSC)**

Please reply as to whether you will agree to have one of these jurists mediate the matter and please be advised that prior to the mediation my clients will submit a draft cross- complaint to the mediator.

Should you have any questions, please do not hesitate to contact me. Mike Khouri

Michael J. Khouri Khouri Law Firm, APC

101 Pacifica, Suite 380

Irvine, California 92618

(949) 680-6332

http://www.khourilaw.com

4

**EXHIBIT 1 (Attached to Declaration of Michael Khouri in Support of Motion
to dismiss and response to OSC)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

5

**EXHIBIT 1 (Attached to Declaration of Michael Khouri in Support of Motion to dismiss and response to OSC)**

EXHIBIT 2
(Attached to Declaration of Michael Khouri in Support of Motion to dismiss and response to OSC)

MICHAEL J. KHOURI, ESQ. [SBN 97654]
KHOURI LAW FIRM, APC
101 Pacifica, Suite 380
Irvine, California 92618
Telephone: (949) 336-2433
Facsimile: (949) 387-0044
E-mail: mkhouri@khourilaw.com

*Attorneys for plaintiffs*,
Allen Moyer and ADMI Incorporated

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN MOYER, an individual, and ADMI INCORPORATED,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH CELLURA, an individual, ADMI INC., TARSIN MOBILE INC.,<br><br>Defendants | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) VIOLATION OF 15 U.S.C. SECTION 1125**<br>**(2) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200**<br>**(3) COMMON LAW TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND OPPORTUNITIES**<br><br>**AND DEMAND FOR JURY TRIAL** |

Plaintiffs ALLEN MOYER ("Moyer") and ADMI INCORPORATED ("the Real ADMI"),

(collectively "Plaintiffs") respectfully allege as follows:

## I.

## PARTIES

1.    Plaintiff Allen Moyer is and at all pertinent times was a resident of the County of Santa

Clara in the State of California and a citizen of the State of California. At all pertinent times, Moyer

was sole owner and shareholder of the Real ADMI.

2.     Plaintiff the Real ADMI at all pertinent times existed and was incorporated in the State of California with its principal place of business in the County of Santa Clara and at all pertinent times was a citizen of the State of California.

3.     Defendant Joseph Cellura ("Cellura") is and was at all pertinent times a resident of Washoe County in the State of Nevada and was at all pertinent times a citizen of the State of Nevada. At all pertinent times, Cellura was a director and officer of ADMI Inc. ("the Fake ADMI") and Tarsin Mobile Inc. ("Tarsin") (collectively "Defendants").

4.     Defendant the Fake ADMI at all pertinent times existed and was incorporated in the State of Nevada with its principal place of business in the State of New York and at all pertinent times was a citizen of the States of Nevada and New York.

5.     Defendant Tarsin is a publicly traded corporation, which at all pertinent times was incorporated in the State of Florida with its principal place of business in the State of Nevada and at all pertinent times was a citizen of the States of Florida and Nevada.

## II.

## JURISDICTION AND VENUE

6.     Subject matter jurisdiction is based upon 28 U.S.C. Sections 1331 and 1332. Diversity exists because the Plaintiffs are citizens of the State of California and the Defendants are citizens of the States of Nevada, New York and/or Florida. Subject matter jurisdiction also arises out of the Constitution, law, or statutes of the United States since the Plaintiffs allege claims under 15 U.S.C. Section 1125.

7.     Venue is appropriate in this district because the Defendants acquired the information needed to impersonate the Plaintiffs within the County of Santa Clara, State of California and in fact did impersonate the Plaintiffs within the County of Santa Clara, State of California as well as in multiple states of the United States.

8.     To the extent that this matter is based upon federal question subject matter jurisdiction, the Plaintiffs also invoke the supplemental or ancillary jurisdiction of the court with respect to the second and third claims for relief contained in this complaint.

## III.

## AGENCY

9.    The Plaintiffs allege that the Defendants at all pertinent times acted as the agent, servant, employer/employee, partner, co-conspirator, or acted in some other representative capacity of one another. Each Defendant is legally responsible for all the acts alleged below notwithstanding whether any act was committed by another Defendant.

10.    The Plaintiffs allege that at all pertinent times the Defendants were functionally one entity and commingled funds, failed to observe corporate formalities, had common officers and directors and employees, possessed common bank accounts, and paid personal expenses with corporate monies. All of these acts make maintenance of the fiction of corporate separateness unfair, unjust, and unlawful.

## IV.

## FACTUAL ALLEGATIONS

11.    At all pertinent times the Plaintiffs engaged in the business of program, project, and design management, often in the entertainment and hospitality industries. This business space is specialized and unique. Conducting business in that business space is largely dependent upon developing relationships with key individuals in the entertainment and hospitality industries. The Plaintiffs have spent decades building and maintaining a professional reputation and relationships in the industry space. As a result, the Plaintiffs have longstanding relationships with many iconic brands including Apple, Microsoft, Disney, Universal Studios, and others.

12.    In or around 2016, the Defendants were searching for a way to enter the program, project, and design management business. When Cellura discovered one of his acquaintances personally knew Moyer, the Defendants asked for an introduction. After meeting the Plaintiffs, the Defendants became increasingly interested in purchasing the Real ADMI.

13.    Over the next year and a half, the Plaintiffs and Defendants met multiple times in Santa Clara County. During the meetings, the Plaintiffs and Defendants discussed the Defendants' idea of purchasing the Real ADMI. As a consequence, Plaintiffs began to instruct Defendants on all aspects and details of the business. The Plaintiffs explained how to operate the Real ADMI successfully,

including things like operating methods, internal policies, project financing, effective marketing, how to meet key people, building economic relationships, computer tech, the tracking of business leads, and many other forms of critical knowledge.

14. The more the Defendants learned, the more they wanted to purchase the Real ADMI. The Plaintiffs and Defendants proceeded so far as to exchange unsigned letters of intent. While the letters of intent were pending, the Defendants started to represent to investors and prospective clients that the Defendants already had purchased the Real ADMI. In fact, the purchase was never consummated and such representations were intentional falsehoods.

15. After the Defendants failed to purchase the Real ADMI, the Defendants created the Fake ADMI. Upon its creation, the Fake ADMI started operating in concert with Tarsin. Tarsin, Cellura, and the Fake ADMI operated in concert as competitors of Plaintiffs. Tarsin, Cellura, and the Fake ADMI unfairly competed with Plaintiffs by representing orally and in writing that they had purchased Plaintiffs and/or were part of Plaintiffs' business operations.

16. The Defendants impersonated Plaintiffs in the same business space of the hospitality and entertainment industries. The Fake ADMI was nearly identical to the real ADMI. Based out of neighboring Nevada, the Fake ADMI imitated the Real ADMI down to the finest details. For example, the Fake ADMI utilized an email address that was virtually identical to the email address utilized by the Real ADMI. Additionally, the Fake ADMI utilized the Real ADMI's website when the Fake ADMI conducted marketing activities, entered contracts, and issued press releases before and after consummating agreements on projects. The Fake ADMI so thoroughly imitated the Real ADMI that the Fake ADMI's attorney sent a bill to the Real ADMI. The Defendants also reached out to prospective clients representing the Fake ADMI as affiliated with the Plaintiffs. The Defendants often claimed that the Fake ADMI was a branch office of the Plaintiffs or that the Defendants owned the Real ADMI outright. The Defendants essentially impersonated the Plaintiffs.

17. All of the Defendants impersonated Plaintiffs through false, misleading, and deceptive practices in the State of California (principally in the Counties of Santa Clara and Los Angeles, State of California) and Defendants also impersonated Plaintiffs through false, misleading, and deceptive

statements. In addition, the false, misleading, and deceptive statements occurred within the last year of the filing of this complaint and continue to occur to this day.

18.    Defendants' impersonation of Plaintiffs was intentionally misleading and deceptive and created confusion in the industry. For example, Authentic Brands Group (owner of Sports Illustrated magazine) unknowingly entered into a licensing agreement with Defendants while believing the agreement was with Plaintiffs. After the Plaintiffs missed out on the agreement with Authentic Brands, the Plaintiffs contacted Authentic Brands and inquired why Authentic Brands chose to enter into an agreement with Defendants. In response, Authentic Brands indicated confusion and told Plaintiffs that Authentic Brands thought it had entered an agreement with Plaintiffs. Authentic Brands entered into the agreement with Defendants based upon confusion caused by the Defendants' misleading and deceptive impersonation of Plaintiffs. Authentic Brands was especially vulnerable to such deception because of its prior business relationship with Plaintiffs. The Defendants were also instrumental in publishing press releases that prominently featured their relationship with Authentic Brands. Defendants impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs.

19.    The Defendants also deceived and misled the Golden Dome Partners. Golden Dome is a company that pursued financing for a sports-themed resort location at the University of Notre Dame. The Defendants falsely represented to Golden Dome that the Defendants owned the Real ADMI. The Defendants also falsely represented to Golden Dome that Moyer worked for the Defendants.  Like Authentic Brands, the Golden Dome Partners were confused. The Golden Dome Partners believed they were dealing with the Plaintiffs. The Defendants were instrumental in publishing press releases boasting of their relationship with Golden Dome with links in those releases to Plaintiffs' website. In those press releases, Defendants again impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs. Absent the Defendants' deception, the Golden Dome business would have been obtained by Plaintiffs.

20.    Another example of the Defendants' deceptive practices was the Defendants' solicitation of the Eastern Band of Cherokee Indians ("Cherokees"). The Cherokees sought to develop a sports-themed resort on land owned, occupied, or managed by the Cherokees. In soliciting the Cherokees, the

Defendants impersonated the Plaintiffs. The Cherokees were told that the Defendants owned the Real ADMI; that representation was a lie. The Cherokees were told that Moyer worked with or was affiliated with the Defendants; that representation was a lie. The Defendants were instrumental in publishing a press release about their relationship with the Cherokees that contained a link to Plaintiffs' website. Just like with Authentic Brands and Golden Dome, in that press release Defendants impersonated Plaintiffs by boasting of achievements that were actually accomplished by the Plaintiffs.

21.    Authentic Brands, Golden Dome Partners, the Cherokees, and others would not have conducted business with Defendants if not for the Defendants impersonating the Plaintiffs by use of misleading, deceptive, and confusing practices. Indeed, there are many other clients and potential clients of Plaintiffs that were deceived by Defendants. A list of such clients is attached to this complaint as Exhibit 1.

22.    The Plaintiffs have needed to reach out to multiple clients and potential clients to reveal the Defendants' impersonation and attempt repairing the Plaintiffs' reputation and relationships. The Plaintiffs still do not know the full extent of the Defendants' deception.

**V.**

**FIRST CLAIM FOR RELIEF – VIOLATION OF 15 U.S.C. SECTION 1125**
**Against All Defendants**

23.    The Plaintiffs re-allege and incorporate by reference each allegation in paragraphs 1 through 22 of this complaint as if fully set forth herein.

24.    15 U.S.C. Section 1125 explicitly prohibits using false or misleading representations of fact likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of a person with another person. The Defendants violated Section 1125 by impersonating the Plaintiffs. The Defendants intentionally created a corporation with a name nearly identical to the Real ADMI, operated in the same business space as the Plaintiffs, pursued clients by utilizing the Plaintiffs' website and a virtually identical email, expressly represented to customers in the industry that the Plaintiffs were associated with the Defendants, and boasted of achievements that were actually the Plaintiffs' accomplishments. In short, the Defendants took extensive measures to intentionally cause confusion and mistakes among the Plaintiffs' clientele and in the Plaintiffs' business space.

25.     As a direct and proximate result of impersonating Plaintiffs through false, misleading, and confusing practices the Defendants were able to obtain program, project, and design management agreements.

26.     As a result of the Defendants' alleged unlawful conduct, the Plaintiffs have suffered damages in excess of 20 million dollars, with the exact amount to be proven at trial.

## VI.

## SECOND CLAIM FOR RELIEF - VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200

### Against All Defendants

27.     The Plaintiffs re-allege as if fully set forth below, all the allegations in paragraphs 1 through 26 of this complaint.

28.     California Business and Professions Code Section 17200 defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Defendants' impersonation of the Plaintiffs constitutes unlawful, unfair, untrue, or fraudulent business conduct, so the Defendants' actions violate Section 17200. The Defendants' actions are also independently unlawful under 15 U.S.C. Section 1125.

29.     Section 17200 also defines unfair competition as unfair, deceptive, untrue, or misleading advertising. The Defendants used such advertisements to promote the Fake ADMI and perpetuate the impersonation, which qualifies as unfair, deceptive, untrue, or misleading advertising. Therefore, the Defendants' advertisements also violate Section 17200.

30.     The Defendants' unlawful, unfair, or fraudulent conduct and advertising directly and proximately caused the Plaintiffs damages because Authentic Brands, Golden Dome, the Cherokees, and others entered agreements with the Defendants as a result of Defendants' impersonation of Plaintiffs. As a result, the Plaintiffs have suffered actual and general damages to be proven at trial. The Defendants should also be ordered to disgorge to Plaintiffs all income and monies collected as a result of Defendants' impersonation of Plaintiffs, along with statutory fines and penalties.

## VII.

## THIRD CLAIM FOR RELIEF – COMMON LAW TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

### Against All Defendants

31.     Plaintiffs re-allege as if fully set forth below, all the allegations in paragraphs 1 through 32 of this complaint.

32.     At all pertinent times, Plaintiffs had existing economic and business relationships with Authentic Brands, Golden Dome Partners, the Cherokees, and others including but not limited to the entities set forth in Exhibit 1 of this complaint. These economic and business relationships would have more probably than not resulted in future economic benefit to Plaintiffs.

33.     At all pertinent times, Defendants had actual knowledge of Plaintiffs' existing and potential business and economic relationships.

34.     At all pertinent times, Defendants knowingly and intentionally interfered with Plaintiffs' existing and potential business and economic relationships. The Defendants knowingly and intentionally interfered with Plaintiffs' existing and potential economic and business relationships with Authentic Brands, Golden Dome, the Cherokees, each entity identified in Exhibit 1, and others unknown, whose identities will be discovered during this litigation.

35.     The Defendants directly and proximately caused economic harm to the Plaintiffs. As a sole, direct, and proximate result of Defendants' interference as alleged above, Plaintiffs have suffered general and special damages including but not limited to loss of income, loss of reputation, and loss of business opportunities.

36.     The conduct of the Defendants as alleged above was committed with malice, oppression, and fraud performed with the intent to vex, injure, or annoy Plaintiffs. The Defendants knowingly, intentionally, and purposefully impersonated the Plaintiffs with the goal of eliminating the Plaintiffs from the marketplace and destroying the Plaintiffs' business. The Plaintiffs are entitled to punitive damages in an amount that would punish the Defendants and deter such conduct in the future.

## VIII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

### ON THE FIRST CAUSE OF ACTION

1. For general damages in excess of 20 million dollars, with the exact amount to be proven at trial;

### ON THE SECOND CAUSE OF ACTION

2. For restitution and disgorgement of funds which Defendants obtained from impersonation of the Plaintiffs;

3. For statutory fines and penalties;

4. For Plaintiffs' attorney's fees;

### ON THE THIRD CAUSE OF ACTION

5. For general damages in excess of 20 million dollars, with the exact amount to be proven at trial;

6. For punitive damages in an amount to be determined at trial;

### ON ALL CAUSES OF ACTION

7. For cost of suit and other relief the court deems just and proper;


Respectfully submitted,

Dated June 20, 2023                          KHOURI LAW FIRM, APC

By:    /s/Michael Khouri
       MICHAEL J. KHOURI
       *Attorneys for Plaintiffs*,
       ALLEN MOYER
       ADMI INCORPORATED

## IX.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

By:    /s/Michael Khouri
           MICHAEL J. KHOURI
           *Attorneys for Plaintiffs*,
           ALLEN MOYER
           ADMI INCORPORATED