EXHIBIT 8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADMI, INC., TARSIN MOBILE INC., by their CEO, JOSEPH R.CELLURA and JOSEPH R. CELLURA, Individually, <br><br> Plaintiffs, <br><br> Vs. <br><br> ALLEN D. MOYER, ADMI, INCORPORATED., AND DOES 1-2, <br><br> Defendants. | Case No.: 22-9339-ALC <br> **Amended Civil Complaint** <br> 1) Fraud, Coercion, Extortion & Conspiracy <br> 2) Securities Fraud Sec.10(b) & 10b-5 Exch. Act <br> 3) Intentional Interference with Contract <br> 4) Interference with Prospective Business <br> 5) Prima Facie Tort <br> 6) Breach of Contract/Promissory Notes <br> 7) Defamation/Defamation *Per Se* <br> 8) Intentional Infliction of Emotional Distress <br> 9) Injunctive Relief/Declaratory Relief <br><br> **Jury Trial Demanded** |

**COMES NOW** Plaintiffs ADMI, INC., ("ADMI-NV") TARSIN MOBILE INC., ("TMIX") and JOSEPH R. CELLURA ("CELLURA") (hereinafter and collectively "Plaintiffs") by and through their counsel of record as and for their claims in an Amended Complaint against, ALLEN D. MOYER, ("MOYER") ADMI, INCORORATED ("ADMI-CA") and Does 1-2 (hereinafter and collectively "Defendants"), hereby alleging as follows:

## I.
## Jurisdiction and Venue.

1.      Subject matter jurisdiction is conferred upon the Court pursuant to 28 U.S.C. § 1331 for claims asserting Securities Fraud in violation Sections. 10(b) & 10b-5 of the 1934 Exchange Act and pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties with the amount in controversy exceeding the sum of $75,000.00.

2.      The Defendants are subject to specific personal jurisdiction in New York because the contacts with the forum state gave rise to the causes of action.[1]

3.      Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that

---

[1] Plaintiffs will substantively respond to Defendants' motion to dismiss based on lack of personal jurisdiction should the issue be raised.

Plaintiff ADMI-NV has its principal place of businesses located within the Southern District of New York, where the material events giving rise to this claim concerning each of the Plaintiffs' damages arose and are within the district of this Court.

## II.
## Supplemental Jurisdiction.

4.     Plaintiffs further invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over all state law claims and as against all parties that are so related to the claims in this action and within the original jurisdiction of this Court that they form part of the same case or controversy including acts bestowing both specific and personal jurisdiction over the Defendants in New York.

## III.
## The Parties.

### Plaintiffs:

5.     ADMI-NV is a private company formed and incorporated in the State of Nevada with its principal place of business in New York, New York.

6.     TMIX is a publicly traded company formed and incorporated in the State of Florida with its principal place of business in Nevada.

7.     CELLURA is a citizen and resident of the State of Nevada, was and is the CEO and director and officer of ADMI-NV and TMIX.

### Defendants:

8.     MOYER is a citizen and resident of the State of California, was or is a director and officer of ADMI-CA.

9.     ADMI-CA was formed and incorporated in the State of California with its principal place of business in California.

10.    ADMI-CA is the alter ego of Defendant MOYER wherein MOYER is doing business and is engaged in and derives substantial profit from interstate and international commerce inclusive of New York.

11.    The true names and conduct of Defendants DOES 1-2 are not known with enough factual certainty to sue in their actual names.

12.    Plaintiffs will seek leave of this Court to amend their Complaint to insert the true, full names and characters of each of the DOE Defendants.

## IV.
## Introduction.

13.    Authentic Brands Group, LLC ("ABG") is a famous brand management company with its principal place of business in New York City, New York.

14.    ABG owns all rights, title and interests to the trademark and tradename "Sports Illustrated," including the right to issue brand licenses for its use.

15.    In or around May 2021, in New York, ADMI-NV f/k/a One-Day Inc., with Experiential Ventures Hospitality ("EVH") entered into a licensing agreement with ABG (hereafter the "New York Agreement") to use the tradename and mark variations of Sports Illustrated.

16.    ADMI-NV is a licensee of TMIX, which developed a proprietary intellectual property ("IP") featuring a SaaS platform delivering services in a wide range of businesses including, hospitality, work and play environments, event venues, stadiums, entertainment venues, museums, and hotels worldwide.

17.    The New York Agreement provides ADMI-NV the right to promote TMIX's SaaS IP in association with the Sports Illustrated name and approved mark variations in the hotel and hospitality industry.

18.     The New York Agreement terms requires ABG's prior consent for the use of the tradename and mark variations.

19.     In or about October 2021, ADMI-NV entered into a proposed agreement with One Pacific Development Group, LLC ("OPDG") by its CEO Peter Maharaj for hospitality projects employing TMIX's SaaS IP with the prior consent of ABG.

20.     Defendants unlawfully interfered in Plaintiffs' existing New York Agreement with ABG and the potential relationships with OPDG.

21.     Defendants conspired and engaged in fraudulent and deceitful acts, misrepresentations and other tortious conduct causing financial injury to the Plaintiffs.

22.     Defendants falsely claimed that Plaintiffs are impersonating their identity and were awarded a contract where the Defendants were the intended beneficiaries, not Plaintiffs.

## Plaintiffs' Proprietary Intellectual Property and Business Model.

23.     ADMI-NV's SaaS IP is a managed platform that allows customized integration of destination magazine featured content for themed attractions fixed to partnership destinations.

24.     The platform delivers branded augmented reality experiences to businesses by featuring a robust API to target resort guests, which allows individual vendors to sell their brand merchandise by engaging consumers in a live augmented-reality experiences while at the same time providing opportunities to share fees and rewards under separately recognize loyalty programs between sponsors and vendors. The guest sponsor can target their brand products and services to branded vendors bringing instant recognition, building brand loyalty to both sponsors and vendors apply TMIX's platform.

## Defendants' Construction Services Business Model.

25.      MOYER is an architect by training. MOYER is in the business of commercial real estate developer with concept ideation; design; construction; and delivery of experiential spaces in United States and internationally.

26.      MOYER claims ownership of a network of globally recognized resources in the entertainment, retail, and hospitality sectors.

27.      MOYER's Marketing Deck **(Exhibit "A".),** and website ADMI INCORPORATED (https://admii.com) contains MOYER's bio and services offered.

28.      The deck and website claims accomplishments with stock photos from the public domain.

29.      The website omits notice of any restricted use and identifies Defendants as independent contractors in the construction management business.

30.      The Website offers services focusing on coordinating, and oversite of construction projects under Master Service Agreements.

31.      ADMI-CA's projects are executed in the following manner:

- Assign an experienced project manager, who is responsible for overall project direction on behalf of Owner.

- Prepare a detailed project execution plan including the acquisition of design and construction services, a project wide performance schedule, budget, and project commissioning, as well as warranty and maintenance management planning and execution as required.

- Prepare a detailed estimate of the project cost, based on approved final drawings and specifications.

- Prepare a construction schedule by area.

- Supervise and coordinate the checking and approval shop drawings.

- Provide onsite, full-time construction supervision and subcontractor control.
- Provide onsite, full-time construction supervision and subcontractor control.
- Prepare cost estimates for any required changes as the work progresses.
- Check and approve supplier and contractor invoices before payment occurs.
- Pay all suppliers and subcontractors for work performed.
- Cooperate with your staff architect and inspector, and keep you informed on all aspects of job progress.
- Maintain a proactive safety program.
- Submit monthly control reports detailing the project's progress and status.
- Provide and maintain a Quality Control and Quality Assurance program.

32.    Plaintiff ADMI-NV and Defendant ADMI-CA operate in different business areas and have different target markets in different geographical locations.

33.    Each entity is filed and registered with the Secretary of State for their respective states, and neither is trademarked.

## Summary of Plaintiffs' Claims.

34.    This action is brought because of Defendants' unlawful and otherwise wrongful acts.

35.    After learning about the New York Agreement between Plaintiffs, ABG and agreements with other business partners, Defendants knowingly and maliciously made false statements directed at ABG and others in New York that Plaintiffs had stolen and impersonated Defendants, constituting interference in both their existing and potential business contracts.

36.     Defendants conspired to coerce and extort money and securities from Plaintiffs by means of *per se* defamatory statements by causing confusion themselves and then alleging that Plaintiff had impersonated Defendants and confused ABG and other business partners.

37.     In their efforts to cause confusion, Defendants misidentified ADMI-CA to ABG and others orally and in formal documents, Defendants purposefully withheld facts that distinguish ADMI-CA and ADMI-NV in the marketplace, including but not limited to the express variations in their names, products, services, target audience, business models, and geographic locations, and Defendants failed to clear the confusion caused by themselves.

38.     By reason of their intentional misrepresentations, fabrications, and withholding of facts, Defendants caused injury to Plaintiffs by having ABG and others believe that the Agreement was acquired with false pretenses - CELLURA's impersonation of MOYER's and ADMI-CA's identities and profiles.

39.     By reason of the conspiracy in the use of false-unlawful and malicious communications, Defendants caused consequential and special damages to the Plaintiffs.

40.     Plaintiffs also seek a declaration and permanent injunction addressing: 1) the Defendants' unlawful acts and the resultant economic harm to the Plaintiffs' business and reputations, 2) requesting the Court issue an order permanently enjoining-prohibiting Defendants' direct or indirect continuing interference with Plaintiffs' existing and future customers-partners in their business affairs, economic interest, and in their names-reputations standing and likeness.

**V.**

**Facts.**

41.    In or about June 2016, MOYER was introduced to TMIX, related to a possible joint-venture involving the hotel and resort industry using MOYER's construction site development company ADMI-CA, and his funding source company, Corinthian Development Company ("Corinthian").

42.    MOYER was told by CELLURA (who was aware of MOYER's published claims of success as an architect and site coordinator in hotel design and project management) of the desire by TMIX shareholders to employ its intellectual property ("IP") its SaaS mobile application using magazine content for targeted guest bookings as a fee and rewards service for hotel and resort vacations worldwide.

43.    MOYER-ADMI-CA, and Corinthian offered TMIX their services which were to include managing and negotiating the funding process with lenders, banks, and other capital sources to be run and administered by his known associate Mark John Melchiori, wherein they entered preliminary negotiations for a joint venture related to domestic and international hotel site development and funding which would offer TMIX's IP first placing the assets into MOYER's Company ADMI-Florida and then merging the company with a new company or a TMIX subsidiary.

44.    CELLURA became alarmed by what he perceived was a high-pressure attempt by the Defendant MOYER to arrange financing which would require TMIX to give control of its IP, turning it over to him and Melchiori as a term to obtaining financing.

45.    The parties were unable to reach an agreement for the joint venture but agreed that ADMI-CA/TMIX and its subsidiaries would share business referrals as independent contractors and "Team Members".

46.     TMIX agreed it would offer MOYER/ADMI-CA an opportunity to promote his services as an outside consultant to its partners and future partners presenting them in its marketing decks as a team member allowing him to bid independently for his construction development services on various projects against other bidders in the open market including the development of projects between ADMTech and EP5-Monumint.

47.     On multiple occasions MOYER furnished and updated his bio imagery and profile for inclusion in Plaintiffs marketing decks intending to promote his services as an independent contractor, outside consultant and "Team Member" for different TMIX and its subsidiary projects.

48.     By reason of the foregoing, MOYER consented or otherwise abandoned any exclusive use of his bio-imagery weblink and photo display including his previous projects for inclusion in the TMIX business plan and marketing pitch decks and its subsidiaries, including ADMTech, EP5-Monumint, allowing these Companies to promote his and ADMI-CA's services as an outside consultant and "Team Member."

49.     Shortly after the failed attempt to joint-venture, CELLURA discovered Melchiori had been indicted on 47 counts of fraud. Defendant Moyer denied his knowledge of the indictment and because there was no proof at the time of MOYER's involvement, CELLURA gave him the benefit of any doubt and continued to make referrals.

**Due Diligence Discovery and Forced Bailout of MOYER/ADMI-CA.**

50.     After MOYER, and CELLRA were unable to reach an agreement on Partnership; after MOYER agreed, approved, and authorized the use of his bio-photo display, and weblink displaying his previous projects, in or about October 2016, MOYER

approached CELLURA and requested a bailout concerning his previously unknown personal and business debts for ADMI-CA.

51.     At no time prior to MOYER's agreement as an independent consultant to TMIX did he disclose his financial instability. His debts included pending obligations concerning outstanding IRS taxes and penalties imposed by the US Internal Revenue Service and other creditors.

52.     MOYER's disclosure of his financial and IRS problems to TMIX resulted in TMIX being forced to provide funding, financial resources, and support to bail MOYER-ADMI-CA out of his working capital deficiencies so he did not default on open projects of his own or for which he was referred or otherwise were pending for TMIX.

53.     At or about this time, beyond the personal loan of CELLURA, the matter of MOYER's financial duress was serious enough that through their established banking partners-Blackstone Resources Group, TMIX, because MOYER had been referred to as a consultant on several major projects under consideration by TMIX customers, the Company was forced to continue use of his services and forced to aid him in securing a One Million ($1,000,000.00) Dollar up to Five Million ($5,000,000.00) Dollar line of credit.

54.     Plaintiffs are informed and believe MOYER withdrew over Two Million ($2,000,000) Dollars and then defaulted on the arranged credit line for ADMI-CA, using it for his own personal debts, wherein TMIX's prior good relationship with its banking partners has now been permanently disrupted.

55.     On or about November 23, 2016, MOYER executed a Promissory Note for a loan in the amount of One Hundred Thousand ($100,000.00) Dollars plus interest payable

to Cellura and a third party. **(Exhibit "B".)**

56.     That on or about May 2019, the Note was assigned to CELLURA together with interest thereon and became due and payable.

57.     That despite due demand for payment MOYER has refused to make payments or repay the loan as to the terms of the agreement and is in breach of the Note.

58.     To reduce exposure to its partners and future partners TMIX scaled back its introduction-referral of the Defendants MOYER/ADMI-CA to any new projects or partners.

### Plaintiffs' New York Business Partners & MOYER's Express Disclosure He Was an Independent and Outside Consultant for TMIX and its Subsidiaries.

59.     In or about late September 2019, Defendant MOYER contacted Plaintiff CELLURA claiming he was correcting the credit line default and that he was again seeking referrals for his services. He was engaged in the working on the Apple Store project in New York and believed it would show he was back on track.

60.     Shortly thereafter, CELLURA again agreed it would offer MOYER/ADMI- CA an opportunity to promote his services as an outside consult to its partners and future partners allowing him to bid for architectural and management services on various projects against other bidders in the open market including the development of a project between EP5-Monumint and Lord Cultural Services, wherein MOYER met with the executives for these companies in New York to negotiate his providing a Master Services Agreement as an outside consultant and team member to the project.

61.     In January 2020, Plaintiff CELLURA began negotiations with EVH and ABG concerning the New York Agreement brand license for use of the tradename "Sports Illustrated" and variations thereof including the right to issue brand licenses for

their use in developing hotel and resort destinations and application of the TMIX IP.

62.     At about this time, MOYER became aware CELLURA was negotiating with ABG and EVH for the SI-Agreement wherein on February 13, 2020, MOYER asked for an introduction to ABG. MOYER provided his Marketing Deck.  CELLURA agreed to introduce MOYER to ABG executives in New York as an outside consultant and provided MOYER's-ADMI-CA's Marketing Deck. **(Exhibits "A" & "C".)**

63.     Thereafter, MOYER was introduced to ABG Executives wherein he provided his pitch deck soliciting his services including his offer to redesign commercial stores for ABG confirming he would act as an outside consultant offering independent services for himself and his company ADMI-CA.

64.     At about this time, CELLURA told MOYER he would use his services as an independent referral choice for it approved projects under the SI-Agreement so long as he used ADMI-NV IP wherein ADMI-NV and would promote his independent services as a first choice among public bidders for each project.

65.     In or about February 2021, CELLURA identified a potential client for ADMI- NV's IP services, Lifestyle Revolution LLC., a company run by its CEO Nik Halik, where Halik agreed to discuss an investment in ADMI-NV.

66.     At about this time Halik advised CELLURA he wanted to develop a themed destination hotel park located in Colorado and was looking for a site plan developer.

67.     That CELLURA told Halik about MOYER-ADMI-CA and told him to review the website ADMI-CA. CELLURA told Halik MOYER was an outside and independent consultant, wherein as agreed ADMI-NV would promote or otherwise offer its IP as integrated by MOYER and ADMI-CA into Lifestyles' project.

**MOYER's False & Defamatory Per Se Statements to Lifestyle Revolution, LLC That ADMI-NV Failed to Make Payment to Him for Services on Their Project.**

**68.**    That in or about March 2021, MOYER met with Halik wherein MOYER agreed he would prepare a Master Services Agreement for a fee of $100,000.00.

**69.**    That Lifestyles agreed to invest $350,000.00 with under a convertible note with a provision at the election the borrower had the exclusive right to convert the investment into fully paid and non-assessable shares of TMIX common stock at Five Dollars ($5.00) per share with an agreed part of the investment to be used to pay MOYER for his preparation of a Master Services Agreement for Halik's project.

**70.**    That MOYER was paid $100,000 less prior payments and expenses and received net $85,000.00 from the proceeds of the Lifestyle-Halik Note wherein MOYER prepared the Master Services Agreement and Halik executed the Agreement on April 15, 2021. **(Exhibit "D".)**

**71.**    Thereafter, MOYER falsely told Halik he was not paid, ADMI-NV and CELLURA ran off with his money and for this reason he would not proceed to develop the Lifestyle project.

**72.**    That MOYER's statements were false, malicious, and constitute extreme and outrageous conduct, *defamation per se* which said statements were made recklessly or otherwise made in bad faith intended to tarnish the name of the Plaintiffs in course of their business and to their reputations.

**73.**    That Halik has repeated MOYER's false statements to others, at a time he knew or should have known the statement was false.

**74.**    By reason of the foregoing Plaintiffs have suffered financially, experiencing a

loss to their business opportunities, suffered hatred, loathing, extreme mistrust among their partners in their workplace and in the business community.

75.     By reason of the foregoing, Plaintiff CELLURA has suffered humiliation, severe emotional upset, and other injuries.

**MOYER's False Defamatory Statements Concerning the
Truth About Why ADMI-CA Lost Its Notre Dame Bid.**

76.     On May 29, 2021, an agreement was reached with Plaintiff ADMI-, and the SI-Agreement was signed between them, ADMI-NV, EVH and ABG.

77.     On or about October 2021, after CELLURA-ADMI-NV had secured the SI-Agreement, CELLURA advised MOYER that ADMI-NV was going to enter into an agreement with Golden Dome Partners Inc. ("GDP") by its CEO Peter Maharaj for the purpose of purchasing land and developing hospitality projects with ADMI-NV agreeing to employ its IP using the SI-Agreement brand in South Bend, Indiana.

78.     At or about this time, ADMI-NV and GDP identified the University of Notre Dame as a premiere site for the purchase and development of an ADMI-NV on Campus Hotel, using the branded SI-Agreement to attract the land sellers, wherein GDP-Maharaj agreed to secure financing for the Notre Dame project.

79.     At or about this time, MOYER was advised of the project and invited to submit his independent written proposal and bid agreeing to provide a Master Services Agreement on behalf of ADMI-CA for the Notre Dame project.

80.     At all times mentioned herein, Maharaj and was aware MOYER and ADMI-CA were separate entities from ADMI-NV and that MOYER was acting as an independent and outside consultant to ADMI-NV concerning their Notre Dame project. At all times mentioned

herein, MOYER submitted a Master Services Agreement on behalf of ADMI-CA to both ADMI-NV and GDP. **(Exhibit "E 1-4".)**

81.     At all times mentioned herein, MOYER's bid as provided under his Master Service Agreement was rejected by Maharaj.  Notre Dame rejected the project for lack of funding.

82.     At all times mentioned herein, since in or about September 2022, MOYER has falsely stated to third-parties that the Notre Dame project was lost to confusion by reason of CELLURA's theft of his identity and ADMI-NV's improper-unauthorized use of his name, likeness and imagery, at a time he knew and was aware that the real reason he did not get the project was because his bid was rejected as being too expensive, wherein Maharaj-GDP withdrew his offer to fund the project.

83.     That MOYER's statements were false constituting extreme and outrageous conduct,  made maliciously, recklessly and in bad faith intended to tarnish the name of the Plaintiffs in course of their business and to their reputations.

84.     That by reason of the foregoing, Plaintiffs-collectively in their business have suffered financially, were and are experiencing hatred loathing, extreme mistrust among their partners in their workplace and in the business community.

85.     By reason of the foregoing CELLURA has suffered financially suffering extreme humiliation, severe emotional upset, and other injury.

### MOYER's Unlawful & False Statements Intended to Destroy The Plaintiffs' Business & Prospective Business Opportunities.

86.     Since in or about October 2021, MOYER was aware and otherwise knew of ADMI-NV had a valid written Memorandum of Understanding and proposed partnership with Maharaj's company, One Pacific Development Group, LLC ("OPDG").

87.     The MOU provided for the  use of the New York Agreement as part of the proposed branded project in Hawaii.  The agreement provided for the development of ADMI-NV IP hospitality projects using premiere sites to include various Sports Illustrated Beach & Resort properties, including- Kaua'i Lagoons, Kaua'i, HI - Ko'Olina, O'ahu, HI .

88.     ADMI-NV and OPDG by MOU agree to enter a full right to use the New York Agreement's rights as managed by ADMI-NV from its New York offices overseeing their joint project with revenue splits as follows: 1) ADMI-NV and its partners to develop preliminary plans for the development of Sports Illustrated Beach & Resort properties at Kaua'i Lagoons (Kaua'i, HI) and Ko'Olina (O'ahu, HI). 2) ADMI-NV would seek approval from the licensor of Sports Illustrated to include such projects as part of its development program. 3) ADMI-NV would work with the licensor to ensure that all desired aspects of the Sports Illustrated portfolio of intellectual property would be made available for the development of first-class properties. 4) Peter Maharaj would serve as Chairman of the properties and to be the face of the project. 5) ADMI-NV and OPDG would work together to raise sufficient equity capital to commence  property development. OPDG would earn fees on the capital it secured. 6) ADMI-NV and OPDG would work together to secure construction financing and any other capital needs. 7) ADMI-NV and OPDG would be equity partners in the development on a 52%/48% equity split. The MOU was non-binding and on either party until a final agreement could be reached. **(Exhibit "F".)**

89.     In or about October 2022, CELLURA learned MOYER was attempting to illegally solicit funds from Maharaj, that MOYER falsely claimed he was in contact with executives at ABG and that he was assured he had the exclusive architect rights under the New York Agreement by CELLURA; that MOYER falsely claimed the New York Agreement was controlled by him; that ABG knew CELLURA had stolen his bio and imagery and was

illegally using them without his permission or consent for TMIX and ADMI-NV projects

including OPDG's potential project.

90.     On or about September 12, 2022, Defendant MOYER unlawfully attempted to

coerce or otherwise extort fees from Maharaj using ADMI-NV's relationship with him,

wherein having no other way to get money MOYER sent an e-mail to Maharaj with the

knowledge he had no lawful right to use or imply his authority under the New York

Agreement demanding a telephone conference with Maharaj:

> **From:** Allen Moyer <amoyer@admii.com>
> **Date:** September 12, 2022 at 1:22:36 PM HST
> **To:** Peter Aaron Maharaj <peteraaronmaharaj@gmail.com>
> **Subject: Re: Aloha Alan - Let's catch up later today**
>
> As we discussed last week,  Joe is currently in Hawaii, I am
> aware he is there with several of the SI Resort Executives. I
> would encourage you that due to the issues you and Joe have
> both acknowledged that you not only sign the ADMI
> Agreement and fund the engagement fee, that you respond the
> Draft MOU (attached) request a meeting immediately to
> review and agree to terms.  My fear is that after Friday the SI
> option will no longer be available to you.
>
> Please call me as soon as your time permits, thank you! **(Exhibit "G".)**

91.     Based on the email and its coercive and fraudulent bad-faith content, the

threatened loss of the SI-Agreement opportunity between ADMI-CA and OPDG, in fear of

losing the use of the SI-Agreement Brand, Maharaj agreed to a conversation with MOYER.

92.     At the times material hereto, MOYER knew he was acting unlawfully making

false statements while seeking to extort  payment concerning the Hawaii-Maharaj  OPDG,

ADMI-NV SI-Agreement project knowing and aware he was not a party to the agreement and

had no authority to act or demand fees.

93.     During a one (1) hour and 30-minute telephone conversation Defendant MOYER illegally demanded payment of Five Hundred Thousand ($500,000) Dollars from Maharaj doing so while making knowingly false and misleading statements intended to injure the Maharaj relationship with Plaintiffs concerning the ADMI-NV and Maharaj's project development under the MOU and it use of the SI-Agreement with ABG.

94.     At all times mentioned herein, since in or about September 2022, MOYER has falsely stated to third-parties that the OPDG project was lost to confusion by reason of CELLURA's theft and the improper-unauthorized use of his name and likeness at a time he knew and was aware that the real reason he did not get the project was because MOYER's bid was rejected as being too expensive and that Mahaja-OGDP rejected doing business with ADMI-CA based on MOYER's false statements.

95.     By reason of the forgoing Maharaj refused to perform with ADMI-NV for fear Plaintiffs do not have ownership and right of use to the SI-Agreement as claimed by MOYER.

96.     That MOYER's statements were malicious, and constitute extreme and outrageous conduct, which were made recklessly or otherwise in bad faith intended to tarnish the name of the Plaintiffs during their business and to their reputations.

97.     That by reason of the foregoing, Plaintiffs have suffered financially and experienced a loss to their business opportunities, suffered hatred loathing, extreme mistrust among their partners in their workplace and in the business community.

98.     By reason of the foregoing CELLURA has suffered humiliation, severe emotional injury and upset.

**MOYER'S & DOES' Fraud and Deceptive Device Defamation Per Se Intended to Coerce or Otherwise Extort Money and Securities from Plaintiff ADMI-NV.**

99.     On or about July 17, 2022, Defendant MOYER frantically demanded $76,000 in payment for what he claimed were unpaid bills and other benefits from ADMI-NV; funds due for his consulting services where he admitting that he had continuing working capital deficiencies related to completing ADMI-CA's consulting obligations to others and that he would seek funds directly from Plaintiffs' New York partners EVH and ABG, threatening to tell them, although he knew otherwise, CELLURA "stole" his bio, imagery and photos and tricked them into entering the SI-Agreement with ADMI-NV.

100.    Plaintiffs TMIX, ADMI-NV and CELLURA were fearful of MOYER irrational behavior and his threat to interfere with their rights under the SI-Agreement.

101.    That in fear of MOYER's threats on July 18, 2022, Plaintiffs were forced to make a wire payment of Five Thousand ($5,000) Dollars to MOYER-ADMI- CA or suffer the consequences of his false claims and threats to seek money directly from Plaintiffs' NY Partners.

102.    MOYER recognized he could cause fear in Plaintiffs' to the loss of their business relations and force Plaintiff to pay him; that commencing July 2022, to on or about October 31, 2022, without justification or a lawful right to do so in an attempt to coerce and interfere in their business relationships, intending to extort money and valuable property-securities from Plaintiffs, MOYER orally demanded from ADMI-NV and TMIX Board members and directors, that unless he received an equity stake similar to the top four executive of these Companies; that unless Plaintiffs made an immediate substantial payment to him of between Eight Million ($8,000,000) Dollars and Fourteen Million ($14,000.000) Dollars, he would destroy the ADMI-NV business relations with its NY Partners by contacting their key directors and officers; that he would destroy ADMI-NV SI-Agreement rights by falsely

claiming that the potion of the ADMI-NV and TMIX SI-Agreement was his and ADMI-CA's; telling them that Plaintiffs were illegally using his bio-imagery and prior projects accomplishments without his consent; that he never authorized, their use they were" stolen" by CELLURA; that he would bankrupt TMIX and ADMI-NV and otherwise destroy Plaintiffs through protracted litigation, whether his claims were true or not; that he would have his attorneys would "destroy" all of the work and projects that had been done with both ADMI-NV and TMIX in building future relationship in the hotel and hospitality industry.

103.     That in a series of direct overt acts intended to coerce or otherwise extort, Plaintiffs money and securities, with the knowledge aid and assistance of DOES 1-2, EK & MJK, MOYER sent a letter under plan and scheme to defraud;  making untrue statements of a material fact by omitting, failing to state a material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; thereupon engaging in acts, practices, or courses of business which operated as a fraud and deceit upon Plaintiffs' business including sending multiple emails with a letter attached containing *per se* defamatory statements intended to instill fear and intimidate Plaintiffs such that the letter was a deception, a fraud  designed to unlawfully force, coerce and otherwise extort payment as planned by intentionally withholding  material facts making the statements therein being false by omission and otherwise untrue:

> **From:** Allen Moyer <amoyer@admii.com>
> **Subject: You never called, please find the**
> **following Date:** October 25, 2022 at 6:15:57
> PM PDT
>
> **To:** Michael Ghiselli <mike@siresorts.com>
>> Mike, Please provide an update immediately! You
>> were supposed to call today and forward a term sheet,
>> neither of which occurred. Since neither has occurred,

I have been asked to share the attached draft of a letter
my attorneys intend to send concurrent with the filing
of our compliant if we are unable to reach agreement in
the next several days **(Exhibit "H".)**

\* \* \* \*

**From:** Allen Moyer <amoyer@admii.com> **Date:**
October 25, 2022 at 11:26:33 PM CDT **To:**
Michael   Ghiselli   <mike@siresorts.com>
**Subject: Re: You never called, please find
the following**

Thank you Mike, happy to discuss, we continue to
miss the point you and your associates stole  ADMI
brand as noted in the  letter  forwarded  that  my
attorney intend on forwarding as noted. Please find
the  attached  for  discussion  tomorrow  which  is
consistent  with  prior  discussions.  I  am  available
tomorrow at 8:15 am **(Exhibit "I".)**

\* \* \* \*

**104.**     That MOYER intending to advance the Defendants' illegal scheme to coerce or

otherwise extort, money and securities from Plaintiffs' using the emails and attached letter

containing both false, misleading, and otherwise defamatory *per se statements* where-by its

content the letter the act constitutes a conspiracy among Does 1-2, EK & MJK, an  overt  act

of  coercion  and  otherwise  proof  that  they  intended  to injure and defame ADMI-NV  and

CELLURA falsely claiming as  follows:

Date
Letter/Email to SI Resort Database Contact
List address
City, State Zip Code
Subject: ADMI/Joseph Cellura
To: Mr., Ms. or Mrs. XXXXXX

It has come to our attention that in earlier January 2021, Joseph
Cellura began making unauthorized representation that he was the
Chairman and an officer of, ADMI, Inc. Thereafter, he began
a campaign in which he used ADMI's company website, brand and

accomplishments to create the fallacy that he and others participated in the projects noted on ADMI's company website and marketing material. These misrepresentations were made in order to impress your office and subsequently obtain the use of the name Sports Illustrated Resorts from Authentic Brands Group.

It is with enormous regret that we must inform you that Joseph Cellura, deceived you and others, he has never worked for ADMI. He has never participated in any of ADMI's Hospitality, Entertainment, Retail or Commercial projects or initiatives. ADMI was formed in 1999 and since that time Mr. Moyer has been the sole officer, director and shareholder of the company.  To be clear, Cellura has never had any involvement with ADMI. It is unlikely that he has any real experience in the industry.

We can assure you that we intend to pursue the damage Cellura, his associates and affiliates has or may have caused ADMI or Allen Moyer personally, to the fullest extent of the law.

The intent of this letter is to make assurance that you do not engage in business with Cellura with the understanding that he does not hold any role or position in ADMI. To be clear, he has never held any job, title, or authority with ADMI.  Mr. Cellura has no authority to act on behalf of ADMI in any capacity.

Once again, our sincere apologies, should you require a further conversation, we have provided our contact information as follows. Mr. Moyer would be delighted to speak with you personally, should you desire. **(Exhibit "J".)**

\* \* \* \*

105.    That Plaintiffs refused to make payment wherein MOYER's and Does 1-2, EK & MJK, as admitted have made direct contact with Plaintiffs NY Partners falsely  telling them, that they  were dupped-confused into entering the SI-Agreement-contract with ADMI-NV, based on CELLURA's theft of his identity and false statements concerning the use by him of Defendants' projects as ADMI-NV projects.

106.    The telephone call, statements, email, and letter were acts of fraud, part of a scheme using knowingly false and  *defamatory per se* statements intentionally spoken and written to cause confusion, wherein the communications lacked any acknowledgement that

CELLURA was and is the CEO of ADMI-NV, that the companies differ in services and operations, targeted differing customers' needs and differing geographical locations, wherein the communications were expressly intended to injure Plaintiffs and otherwise intended to coerce-extort a payment from Plaintiffs without a lawful right or other justification.

107.    The statements were knowingly false, a deceptive continuing and malicious act where such statements were extreme and outrageous recklessly unlawfully made in disregard of the truth intended to tarnish and injure the name of the Plaintiffs in their business and to their reputations in the business community.

108.    That by reason of the foregoing, Plaintiffs have suffered financially and experienced a loss to their actual business opportunities and income, suffered hatred loathing, extreme mistrust among their partners in their workplace and in the business community.

109.    By reason of the foregoing CELLURA has suffered humiliation, severe emotional injury and upset.

### Count I.
### (Conspiracy to Tortiously Interfere with Business Relations
### While Engaging in Unlawful Acts of Fraud, Coercion and Extortion.)
### Against All Defendants.

110.    Plaintiffs incorporate by reference paragraphs **1** through **109** inclusive, as though fully set forth herein.

111.    Defendants, directly or indirectly, singly or in concert with each other in connection with an agreement to interfere in Plaintiff New York business activities with their ABG and other business partners by the use and the means and instrumentality of interstate commerce and the mails, did aid one another in knowingly and with reckless

disregard for the truth such hat they:  (a) employed devices, schemes, or artifices to defraud;  (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and otherwise  (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon Plaintiffs and their NY Partners.

112.    That from as early as July 2022, the Defendants, each of them, acted in concert engaging in a conspiracy agreeing to support their common purpose and plan  to coerce and otherwise extort money and securities  defaming Plaintiffs to unlawfully and without just cause force Plaintiff to make payment to them doing so by committing multiple overt acts employing both oral and written statements.

113.    At all times material hereto,  any relationship with Plaintiffs and ADMI-CA was no more than an agreed upon at-will business referrals as independent contactors'  expressing their different models at targeted customers in both differing and common geographical locations where fees would be paid by third parties to either ADMI-CA or ADMI-NV for the individual and separate services as provided under the terms of their agreement to act as independent service providers of each other.

114.    At all times material hereto, any referral was with Defendant MOYER's express consent and participation allowing Plaintiffs use of his bio, imagery, and website or its use was otherwise protected by operation of law withing the public domain for their referral.

115.    At no time material hereto were the Defendants, ADMI-CA or MOYER engaged in an exclusive agreement with ADMI-NV  for Defendants' services, nor was there a reliance otherwise the use of their bio imagery-profile or website in Plaintiffs' securing their

rights under the SI Agreement or for any other purpose than offering the Defendants as a referral and independent outside consultant.

116.     Defendants were aware and knew there was and is a valid and existing contract between the Plaintiff ADMI-NV and their NY Partner; wherein they have conspired to commit unlawful acts constituting coercion intended to extort Plaintiffs, using acts directed at Plaintiffs and their New York Partners  doing so to make them believe CELLURA was a criminal who stole the identity of MOYER and ADMI-CA to obtain the SI-Agreement on behalf of ADMI-NV and who ran off with funds owned to MOYER.

117.    The statements were of claimed fact and not opinion constituting fraud and d*efamation per se,* directed at, and intended to coercion Plaintiffs' NY Partners  not to do business with ADMI-NV or CELLURA.

118.    That on or about October 25, 2022, by their email and letter MOYER in league with the knowledge and consent, in cooperation DOES 1-2, EK and MSK intending to cause harm and fear or otherwise coerce payment of cash and securities to them by means of false statements, the Defendants sent e amils and a draft letter constituting an overt act of extortion and greenmail activity threatening Defendants that unless they were paid they would notify Plaintiffs NY Partners that CELLURA was a criminal who stole the identity of MOYER and ADMI-CA to obtain the SI-Agreement on behalf of ADMI-NV and who ran off with funds owned to MOYER.

119.    Each Defendant committed at least one overt act in furtherance of such conspiracy including misleading Plaintiff's NY Partners as to the true purpose of their plans concealing the truth intending to facilitate the payment and deleivery of securities to them by the unlawful and unjustified means described above. For the reason the acts taken toward Plaintiff CELLURA were carried out in a deliberate,  callous,  and  intentional  manner

intending to injure and damage Plaintiff, he is entitled to recover punitive damages from Defendants in an amount according to proof.

120. Defendants' unlawful conspiracy has directly and proximately caused and continues to cause injuries to Plaintiff in its business and property. This injury includes Plaintiff's loss in competitive rights and in the value of their contract with their NY Partners by reason of a breach to the terms of the SI-Agreement.

121. Plaintiff ADMI seeks an award of damages for, among other things, the resultant damage caused by Defendants' unlawful and unjustified conduct.

122. Plaintiff also seeks the imposition of punitive damages sufficient to deter Defendants from committing such unlawful conduct in the future.

123. That Defendants' conduct was a substantial factor in causing the harm. Plaintiff suffered compensable damages.

124. For this reason, but for the intentional manner Defendants conspired to injure Plaintiff, Plaintiff ADMI-NV is entitled to recover both compensatory and punitive damages from Defendants in an amount according to proof at trial and in an amount no less than Fifty Million ($50,000,000.00) Dollars.

125. Defendants' conduct as alleged herein was malicious and oppressive in that it was directed at ABG and others, carried out by the Defendants in an unlawful, willful, consciously, and malicious manner with an intended disregard of Plaintiffs contractual rights.

126. The Defendants aided and otherwise conspired to disrupt Plaintiffs' rights under their contracts without justification acted maliciously wherein Plaintiffs have suffered actual damages resulting therefrom.

127.    A direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than Fifty Million ($50,000,000) Dollars and otherwise an amount to be proven at the time of trial.

128.    Defendants' conduct as alleged above was done in furtherance of their own interests, was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

### Count II.
### (Fraud/Misrepresentation & Civil Conspiracy.)
### Against All Defendants.

129.    Plaintiffs incorporate by reference paragraphs **1** through **128** inclusive, as though fully set forth herein.

130.    Defendants, each of them, also conspired to commit the frauds alleged herein, in that all Defendants conspired to injure Plaintiffs and had a meeting of the minds to accomplish that goal through one or more unlawful acts of fraud, as alleged herein, wherein Plaintiffs suffered harm because of Defendants' conduct and conspiracy.

131.    The statements made above are not only *defamatory per se* but  materially false because ADMI-NV was properly identified in the SI-Agreement as a real party-in-interest and neither MOYER nor ADMI-CA were intended to be part of any agreement between the Plaintiffs and their NY Partners.

132.    They are further materially false because Defendants have fraudulently claimed a theft by CELLURA of MOYER's/ADMI-CA's photos, imagery profile and weblink to obtain the SI-Agreement wherein none were used as MOYER claims, nor did they have an effect had on the New York Agreement being reached.

133.    They were also false because MOYER was paid his fees as agreed and his statement to Nik Haik that he has not was untrue.

134.    At all relevant times Defendants had knowledge of the falsity of their representations that the SI Agreement was obtained through the improper use of the profile or any other form of impersonation by Plaintiffs.

135.    Plaintiffs have been forced to respond to the false representations, misrepresentations, and omissions to their NY Partners.

136.    That Plaintiffs NY Partners have relied upon Defendants' false representations, misrepresentations, and omissions.

137.    A direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than Fifty Million ($50,000,000) Dollars and otherwise an amount to be proven at the time of trial.

138.    Defendants' conduct as alleged above was done in furtherance of their own interests, was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## Count II.
## (Fraud/Misrepresentation Section 10(b) of The Exchange Act & Rule 10b-5)
## Against All Defendants.

**139.**    Plaintiffs incorporate by reference paragraphs **1** through **138** inclusive, as though fully set forth herein.

**140.**    Defendants, directly or indirectly, singly or in concert with each other in connection with the attempted purchase of Plaintiffs securities, by the use and the means and instrumentality of interstate commerce and the mails, did aid one another in knowingly and with reckless disregard for the truth such hat they:  (a) employed devices, schemes, or artifices to defraud;  (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and otherwise  (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon other Plaintiffs and their NY Partners .

**141.**    A direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than Fifty Million ($50,000,000) Dollars and otherwise an amount to be proven at the time of trial.

**142.**    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

**Count IV.**
**(Tortious Interference with Prospective Economic Advantage.)**
**Defendant MOYER**

**143.**    Plaintiffs incorporate by reference paragraphs **1** through **142** inclusive, as though fully set forth herein.

**144.**    That Plaintiffs had a business relationship with MOYER knew and was aware of the Maharaj-OPDG and ADMI-NV.

**145.**    At all times material hereto, MOYER knew and was aware of the Maharaj-OPDG and ADMI-NV relationship and its proposed terms; that MOYER without a legal right or justification, intentionally interfered with Plaintiff's relationship with Maharaj wherein MOYER acted in bad-faith unlawfully, falsely claiming-telling Maharaj Plaintiff ADMI-NV did not own or have the exclusive rights under SI-Agreement to consent to the projects approval and that the exclusive use of ADMI-CA services was required or the deal would no longer be available if Maharaj did not execute his separate agreement for payment of fees with MOYER and ADMI-CA.

**146.**    That the defendant acted solely out of malice, and otherwise used dishonest, unfair, or improper means attempting to be paid a fee of Five Hundred Thousand ($500,000) Dollars interfering with the ADMI-TMIX Maharja relationship caused injury to the relationship by unlawfully and fraudulently attempting to substituting ADMI-CA for the interest of ADMI-NV.

**147.**    At all times material hereto, MOYER knew and was aware the foregoing statements were false misleading and would cause harm, confusion to the Plaintiffs in their contractual expectations, their business property, and reputations.

**148.**    By reason of the above Defendant MOYER wrongfully interfered with

Plaintiffs  potential economic relationship intending to wrongfully induce Maharaj to enter into an agreement with him and AMDI-CA, and to forgo its proposed agreement with ADMI-NV.

149.    But for the Defendant's intentional acts-false statements, his false claims of ownership to the SI-Agreement, his false claims that Plaintiff CELLURA stole his bio-imagery, Maharaj would have continued his contract relationship without delay resulting in cost increase, the loss of income, revenue and profits to the Plaintiffs and their rights of income.

150.    The conduct, as described above was independently wrongful, existing as  wrongful acts, as the law prohibits and was committed for a wrongful, purpose by wrongful means causing fear and disruption-harm in the Plaintiffs economic and business relationship with Maharaj.

151.    For this reason, but for the  intentional acts of MOYER,  Plaintiff ADMI-NV would have profited from the agreement with  as is entitled to recover both compensatory and punitive damages from Defendants in an amount according to proof at trial  and  in an amount no less than Five Million ($5,000,000.00) Dollars.

152.    A direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than Fifty Million ($50,000,000) Dollars and otherwise an amount to be proven at the time of trial.

153.    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter

Defendants from engaging in such conduct in the future.

**Count V.**
**(Breach of contract Promissory Notes.)**
**Against Defendant MOYER.**

**154.** Plaintiff incorporates by reference paragraphs **1** through **153** inclusive, as though fully set forth herein.

**155.** That by reason of the foregoing, MOYER is liable to CELLURA for breach of contract. The parties entered into a valid and enforceable Agreement, which was signed by both parties wherein an extension was provided for the benefit of MOYER to make payment thereon.

**156.** Plaintiff CELLURA performed his obligations under the Agreement, which included loaning MOYER $100,000.00 for his personal and business needs.

**157.** Under the clear and unambiguous terms of the Agreement and extensions the Note payment was due for payment of principal and interest on or before November 23, 2018, wherein due demand was made for repayment.

**158.** Defendant MOYER has refused to honor his contractual obligation to provide and make repayment under the terms of the contract and its extensions.

**159.** By reason of the failure to make payment as due MOYER has breach the Agreement, and CELLURA has been damaged in the amount of $100,000 plus interest.

**Count VI.**
**(Prima Facie Tort.)**
**All Defendants**

**160.** Plaintiffs incorporate by reference paragraphs **1 through 159** inclusive, as though fully set forth herein.

**161.** In their attempts to extort payment money and securities from the Plaintiffs,

Defendants  intentionally inflicted harm on Plaintiffs  without excuse or justification. Their statements and actions were motivated by disinterested malevolence, malice, and the desire to extort a settlement from Plaintiffs without litigation.

162.    A direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than Fifty Million ($50,000,000) Dollars and otherwise an amount to be proven at the time of trial.

163.    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

### Count VII.
### (Defamations Per Se-CELLURA.)
### Against All Defendants.

164.    Plaintiffs incorporate by reference paragraphs **1** through **163** inclusive, as though fully set forth herein.

165.    Plaintiffs are informed and believe, and therefore allege, that Defendant MOYER, and DOES 1-2, EK & MJK acted maliciously intentionally causing false publications and defamatory per se statements concerning Plaintiff CELLURA.

166.    These false and defamatory per se statements included as set forth above, but are not limited to the Defendants' express and implied accusations that Plaintiff CELLURA was acting criminally; that he stole Defendant's bio, imagery and photos of his prior projects and that

ADMI-NV/TMIX were using them without his permission or consent falsely creating confusion in the market by claiming to be MOYER and his company ADMI-CA confused ABG to enter into the SI-Agreement with ADMI-NV as well as the claim that MOYER was not paid for his services for preparation on the Lifestyles Master Services Agreement.. that CELLUAR ran off with MOYER's Lifestyle payment other false unjustified claims.

167.    The Defendant MOYER and DOES 1-2, EK & MJK intended to cause damage to CELLURA's professional and personal reputation in his trade, and honesty and were spoken intentionally, in a manner where they were knowingly false and unprivileged communications, direct and intended to cause injury to him.

168.    These statements were defamatory per se, understood by MOYER and does 1-2 Does 1-2, EK & MJK, published to third parties as assertions of fact, and not as opinions.

169.    Each of the statements as set forth above were made and published with the knowledge of the Defendants that they were false, spoken in a manner equaling malice and abuse without privilege, with hatred, ill will, and with an intent to vex, harass, annoy, and injure Plaintiff CELLURA.

170.    That Defendants' acts and words spoken were carried out in a deliberate and callous manner in words spoken toward Plaintiff CELLURA and were carried out in a malicious, callous, and intentional manner intending to injure and damage.

171.    By reason of the foregoing, but for these unlawful and wrongful acts, Plaintiff CELLURA has been injured, and continues to suffer economic harm proximately caused by the Defendants' wrongful acts.

172.    By reason of the foregoing, Plaintiff CELLURA is entitled to recover both compensable and punitive damages from Defendants according to the proof at trial in an amount no less than Ten Million ($10,000,000.00) Dollars.

173.    A direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than Fifty Million ($50,000,000) Dollars and otherwise an amount to be proven at the time of trial.

174.    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

### Count VIII.
### (Intentional Infliction of Emotional Distress-CELLURA.)
### Against All Defendants.

175.    Plaintiffs incorporate by reference paragraphs **1 through 174** inclusive, as though fully set forth herein.

176.    Defendant MOYER and Does 1-2, EK & MJK have engaged in extreme oppressive and outrageous conduct as alleged above, constituting defamation per se, doing so with a willful, conscious, malicious, wanton, and reckless disregard of the truth with the probability in causing Plaintiff CELLURA to suffer severe emotional distress and other hardships while intending to disregard of Plaintiff's rights and have subjected him to cruel and unjust financial and emotional hardship.

177.    Defendants' unlawful acts were/are the proximate cause in causing Plaintiff

CELLURA to suffer financial distress, suffer extreme emotional and physical distress humiliation, mental anguish, causing damage to his name in the community, and in his professional life.

178.    For the reason s set forth above, the Defendants' unlawful acts taken toward Plaintiff CELLURA in the deliberate, callous, and intentional manner intended to injure and damage Plaintiff, CELLURA is entitled to recover both compensatory and punitive damages from Defendants in an amount according to proof at trial and in an amount no less than Thirty Million ($30,000,000.00) Dollars.

179.    A direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than Fifty Million ($50,000,000) Dollars and otherwise an amount to be proven at the time of trial.

180.    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

### Count IX.
### (Injunctive Relief.)
### Against All Defendants

181.    Plaintiffs incorporate by reference paragraphs **1** through **171** inclusive, as though fully set forth herein.

182.    Defendant's threats, their past *per se* defamatory statements, acts of interference'; their acts of coercion and extortion have no nexus to a plausible claim of right;

they were and are  unlawful, wherein Plaintiffs have the right to injunctive relief to avoid

irreparable harm.

**WHEREFORE,** by reason of the foregoing, Plaintiffs pray for relief as follows:

A. Compensatory damages for Defendant per see defamatory statements and the resulting emotional distress in the amount of $50,000,000.00.

B. Damages in the sum of $30,000,000.00 for Defendant's interference with Plaintiffs' contracts and prospective contracts.

C. Payment on the Note of November 2016, together with prejudgment interest on the principal sum of $100,000.00, from November 23, 2018, to the date of Judgment at the maximum rate allowed under the law.

D.  Punitive damages for the collective acts of wrongdoing as claim in each of the Count 1-5 in the amount of $50,000,000.00 as a result of the Defendants' specific intent to harm Plaintiffs and the actual harm inflicted on them.

E.  Injunctive relief.

F.  Costs and such other relief as are just and proper.

Dated: August 25, 2023

*Douglas R. Dollinger, Esq.*

Douglas R. Dollinger, Esq., 5922
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Phone | 845.741.9363
Email ddollingeresq@gmial.com
Attorney for Plaintiffs

AMENDED CIVIL COMPLAINT CASE NO: 22-9339-ALC

## VERIFICATION

Pursuant to 28 U.S. Code § 1746, I  Joseph R. Cellura  declare under penalty of perjury pursuant to the law of the United Sates; that I am a Plaintiff in the above-entitled action; that I have read and assisted in the  preparation of the Amended Complaint in this matter.

The allegations are based on my firsthand personal knowledge of the facts in my individual capacity and as a member of the Board of Directors for TMIX and  ADMI, Inc.  I know each of the facts  and all the documents presented heretofore to be accurate and that the same are true, except as to matters stated therein upon information and belief as to those matters, I state that I believe them to be true.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed: September  9, 2023

DocuSigned by:

*Joseph R. Cellura*

8C61042A053C404...

_____

Joseph R. Cellura